#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD LAIRD** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 23-3429** |
| | : | |
| **J. TERRA, WYNDER, HENSLEY, ALL PROGRAM REVIEW COMMITTEE MEMBERS AT SCI PHOENIX, DR LAUREL HARDY** | : : : : | |

## MEMORANDUM

**KEARNEY, J.**  November 30, 2023

     An incarcerated person challenging his conditions of confinement and seeking damages and injunctive relief under civil rights laws must plead how each individual officer in a correctional facility violated his constitutional right. The incarcerated person cannot claim all persons or all actors did something to him collectively. He also cannot sue the state employees in their official capacity for damages as the Commonwealth has not waived its Eleventh Amendment immunity from damages claims. We grant the facility officials' motion to dismiss with prejudice as to the damages claims against them in their official capacity but without prejudice to the incarcerated person's potential claims against them in their individual capacity or for equitable relief in their official capacities should he be able to identify actions by each official he hopes to sue. We grant the incarcerated person leave to timely amend to plead the individual actions of persons who he believes deprived him of his constitutional rights.

I.   **Pro se alleged facts**

The Commonwealth holds Mr. Laird in custody at SCI-Phoenix following a capital case conviction.[1] The Pennsylvania Department of Corrections earlier placed Mr. Laird in solitary confinement for over thirty years.[2] The Commonwealth placed Mr. Laird in solitary confinement for two-hundred and twenty-seven days beginning on August 8, 2022.[3] One or more facility officials did not place him in solitary confinement for violating the rules and regulations because he has no misconduct reports to date.[4] One or more Facility officials ignored available alternative housing options for Mr. Laird before placing him back in solitary confinement for "no meaningful penological justification/security goal."[5] One of more Facility officials denied Mr. Laird's meaningful review requests during his confinement.[6] They then released Mr. Laird from solitary confinement when they "had been caught in the act of unnecessarily using solitary confinement, a clear act of torture."[7]

One of more Facility officials placed Mr. Laird under modified movement restrictions upon his solitary confinement release.[8] General population inmates in SCI-Phoenix see correctional officers constantly escorting Mr. Laird.[9] Escorting creates a "negative image" as other inmates view Mr. Laird in a "negative light" assuming he is an informant or child molester "in need of constant protection."[10] One or more Facility officials intentionally placed Mr. Laird under modified movement to "draw negative attention," place Mr. Laird in "jeopardy," and "create a hostile environment."[11] Modified movement restrictions are only used in "the capital case unit, against condemned prisoners at SCI-Phoenix."[12]

Mr. Laird's modified movement restrictions "place a[n] undue hardship" on him.[13] One or more Facility officials denied Mr. Laird's access to the main yard, gym, law and leisure library, the opportunity to participate in his religion of choice, religious studies, schoolings, and "all

activity department offerings" available to other capital case prisoners due to his restrictions.[14] One or more Facility officials denied Mr. Laird "meaningful review" of his modified movement restriction.[15]

## II.     Analysis

Mr. Laird sues Superintendent J. Terra, Deputy Superintendent Wydner, Deputy Superintendent Hensley, all SCI-Phoenix program review committee members, and Dr. Laurel Harry for violating his constitutional rights under the First, Eighth, and Fourteenth Amendments.[16] Mr. Laird pleads the Facility officials violated his constitutional rights to due process and protection from cruel and unusual punishment.[17]

Mr. Laird pleads the Facility officials acted in their individual and official capacities by placing Mr. Laird in solitary confinement without punitive reason and ordering "modified movement" restrictions upon his release.[18] The Facility officials "intentionally and with malicious forethought" placed him in solitary confinement and "intentionally created" his modified movement restriction.[19] Mr. Laird claims one or more Facility officials violated his rights to "religious freedom, protection from cruel and unusual punishment, equal protection, and due process of law."[20]

The Facility officials move to dismiss Mr. Laird's pro se Complaint for improper venue, failure to allege personal involvement, failure to state a claim under section 1983, and improper claim for declaratory and injunctive relief.[21] We dismiss Mr. Laird's complaint for failure to plead personal involvement of the individual Facility officials without prejudice and grant him leave to amend to plead claims against a Facility official an individual capacity. We dismiss Mr. Laird's damages claims against the Facility officials in their official capacities as they are state actors entitled to Eleventh Amendment immunity from damages.

3

We dismiss Mr. Laird's claims without prejudice to timely amend his complaint to plead personal involvement of each Facility official in an individual capacity. We dismiss Mr. Laird's claims against the Facility officials in their official capacity with prejudice.[22]

### A. We dismiss Mr. Laird's claims for damages against the Facility officials in their official capacities with prejudice.

Mr. Laird sues Superintendent J. Terra, Deputy Superintendent Wydner, Deputy Superintendent Hensley, all SCI-Phoenix program review committee members, and Dr. Laurel Harry in their official capacities. These Facility officials are immune from damages suits in their official capacities as they are entitled to Eleventh Amendment immunity.

Congress requires plaintiffs allege a state actor or person acting under the color of state law violated one of their constitutional rights to state a claim under section 1983.[23] But "a suit against a [s]tate official in his or her official capacity is… a suit against the State."[24] States and state actors are immune from suit under the Eleventh Amendment unless the State waives its sovereign immunity.[25] The Eleventh Amendment does not bar suits against state actors in their individual capacity.[26] The Pennsylvania Department of Corrections performs executive work for the Commonwealth and "shares in the Commonwealth's Eleventh Amendment immunity."[27] The Commonwealth's immunity protects state actors from damages suit in their official capacity unless the State waives its sovereign immunity.[28]

The Facility officials are Commonwealth employees entitled to Eleventh Amendment immunity from damages suit in their official capacities. Pennsylvania has not waived its Eleventh Amendment immunity.[29] The Eleventh Amendment immunity only applies to suits seeking damages against state actors in their official capacity and does not bar Mr. Laird's claims against the Facility officials in their individual capacity seeking equitable relief.[30]

4

We dismiss Mr. Laird's damages claims against the Facility officials in their official capacity with prejudice.

### B. We dismiss Mr. Laird's claims against the Facility officials without prejudice for not pleading individual personal involvement.

Mr. Laird claims Superintendent J. Terra, Deputy Superintendent Wydner, Deputy Superintendent Hensley, all SCI-Phoenix program review committee members, and Dr. Harry violated his constitutional rights without pleading their personal involvement in the claims. Mr. Laird refers to these Facility officials as a collective without explaining each individual's personal involvement.[31] We dismiss Mr. Laird's complaint against the Facility officials in their individual capacity without prejudice for failure to plead the personal involvement of each Facility official.

#### i. Mr. Laird does not plead Superintendent Terra's personal involvement.

Mr. Laird sues Superintendent Terra for placing him under solitary confinement and modified restriction without punitive reason but does not plead if Superintendent Terra personally ordered these restrictions.

"Defendants in civil rights actions 'must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'"[32] Mr. Laird must plead Superintendent Terra personally (1) "participated in violating [Mr. Laird's] rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations;" or (2) "'maintained a policy, practice or custom which directly caused the constitutional harm,' including a failure to adopt a practice."[33] "[A]wareness of a grievance or complaint after the allegedly unconstitutional conduct has occurred, without more, is insufficient to establish personal involvement."[34]

5

Mr. Laird does not plead Superintendent Terra personally participated in violating Mr. Laird's constitutional rights. He does not plead if Superintendent Terra ordered his solitary confinement or modified movement restrictions. Mr Laird pleads no facts alleging Superintendent Terra individually denied Mr. Laird meaningful review of both his solitary confinement and modified movement restrictions. We dismiss Mr. Laird's theories of Superintendent Terra's liability based on his supervisory role as "officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior."[35] We dismiss Mr. Laird's claims against Superintendent Terra without prejudice.

### ii. Mr. Laird does not plead Superintendent Wynder's personal involvement.

Mr. Laird claims Superintendent Wydner violated his constitutional rights but does not plead Superintendent Wydner's conduct. Mr. Laird instead pleads the Facility officials collectively violated his constitutional rights but does not plead individual action.

Mr. Laird must plead Superintendent Wydner's personal involvement in a constitutional violation. We dismiss Mr. Laird's claims against Superintendent Wydner.

Mr. Laird does not plead Superintendent Wydner's personal involvement in his solitary confinement and modified movement restrictions. Mr. Laird refers to all Facility officials in the collective without pleading to an individual act. He does not plead facts showing Superintendent Wydner personally denied Mr. Laird meaningful review of both his solitary confinement and modified movement restrictions. Mr. Laird does not plead how Superintendent Wydner personally violated his constitutional rights. We dismiss Mr. Laird's claims against Superintendent Wydner without prejudice

### iii. Mr. Laird does not plead Deputy Superintendent Hensley's personal involvement.

Mr. Laird claims Deputy Superintendent Hensley violated his constitutional rights but does not plead Deputy Superintendent Hensley's personal involvement. Mr. Laird must plead facts supporting Deputy Superintendent Hensley's personal involvement in his constitutional violations. We dismiss Mr. Laird's claims against Deputy Superintendent Hensley.

Mr. Laird does not plead Deputy Superintendent Hensley's personal involvement in violating his constitutional rights. Mr. Laird does not plead who specifically ordered his solitary confinement or modified movement restrictions and he does not specify Deputy Superintendent Hensley's personal actions.

We dismiss Mr. Laird's claims against Deputy Superintendent Hensley without prejudice.

### iv. Mr. Laird does not plead the program review committee members' personal involvement.

Mr. Laird claims all program review committee members violated his constitutional rights but does not plead a committee member's names or their acts. Mr. Laird must plead facts supporting the program review committee members' personal involvement in his constitutional violations. We dismiss Mr. Laird's claims against the program review committee members.

Mr. Laird must plead the review members' personal involvement in the constitutional violations. He does not do so. Mr. Laird instead claims "defendants" denied him an opportunity to review his restrictions, but he does not plead who personally denied him review.[36]

We dismiss Mr. Laird's claims against all program review committee members without prejudice.

### v. Mr. Laird does not plead Dr. Harry's personal involvement.

Mr. Laird claims Dr. Harry violated his constitutional rights and does not plead Dr. Harry's personal involvement. Mr. Laird does not plead Dr. Harry's personal involvement in violating his constitutional rights as he only refers to the "defendants'" acts collectively.

7

We dismiss Mr. Laird's claims against Dr. Harry without prejudice.

### III. Conclusion

We dismiss Mr. Laird's claims against the Facility officials in their official capacities with prejudice. We dismiss Mr. Laird's claims against the Facility officials in their individual capacity without prejudice for failure to plead personal involvement but grant him leave to timely amend his complaint if he can plead the individual involvement of Facility officials.

---

[1] *Id.* at § IV. Facts/Argument/Legal Claims ¶1.

[2] *Id.* at 4.

[3] ECF No. 18 at 2.

[4] ECF No. 2 at 4.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at 5.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 7.

[13] *Id.* at 6.

[14] *Id.*

[15] *Id.*

---

[16] ECF No. 2, § I. Jurisdiction and Venue ¶ 1.

[17] *Id.*

[18] *Id.* at § III. Defendants ¶ 9; *Id.* at § IV. Facts/Argument/Legal Claims at 5.

[19] *Id.* at 3, 6.

[20] *Id.* at 6.

[21] ECF No. 18 at 1. Mr. Laird can survive a motion to dismiss if he pleads "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "We accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant" when considering motions to dismiss. *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Legal conclusions without facts are not enough to establish a plausible claim. *Id.* We test the sufficiency of Mr. Laird's factual allegations.

Our Court of Appeals requires we apply a three-step analysis to any plaintiff's complaint before granting a motion to dismiss under 12(b)(6). *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The complaint must [1] "tak[e] note of the elements [the] plaintiff must plead to state a claim; [2] identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and [3] "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting Iqbal, 556 U.S. at 675, 679).

We accept all facts in Mr. Laird's Complaint as true and construe the facts in light most favorable to him to determine whether he states a claim to relief plausible on its face. We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a pro se litigant's pleadings… particularly where the pro se litigant is imprisoned." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); *see Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules – they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245).

[22] The Facility officials move to dismiss Mr. Laird's complaint arguing this Court is not the proper venue to address Mr. Laird's Complaint under a Settlement Agreement in *Reid v. Wetzel* pending in the United States District Court for the Middle District of Pennsylvania. ECF No, 18 at 4.; *Reid v. Wetzel*, No. 18-176, 2020 WL 8184695 (M.D. Pa. Apr. 9, 2020). We disagree. The Facility officials argue Judge Jones expressly retained jurisdiction throughout the Settlement Agreement's duration in *Reid*. ECF No.18 at 3. The Facility officials cite Judge Younge's decision in *Rivera v.*

---

*Little* recognizing the *Reid* Settlement Agreement permits placing capital case inmates in restricted housing "when required by the circumstances." *Id.* at 4. But the Settlement Agreement does not address inmates placed in restricted housing without punitive reason.

We find the Facility officials' improper venue claim unconvincing because the facts here are different than in *Rivera*. In *Rivera*, the incarcerated person assaulted a prison staff member and prison officials placed him in solitary confinement for his misconduct. ECF No. 25 at 3. Neither party claims punitive reasons for Mr. Laird's solitary confinement as Mr. Laird has no misconduct record. ECF No. 2 at 4. The Facility officials did not offer a punitive reason for Mr. Laird's two-hundred and twenty-nine-day solitary confinement placement.

[23] *West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

[24] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[25] *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979); *see also Benn v. First Jud. Dist. Of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).

[26] *Hafer v. Melo*, 502 U.S. 21, 30 (1991).

[27] 71 P.S. §61(a); *Lavia v. Pa. Dep't of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000).

[28] *Callahan v. City of Philadelphia*, 207 F.3d 668, 674 (3d. Cir. 2000); *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

[29] 42 Pa.C.S. §8521.

[30] *See Hafer*, 502 U.S. at 30.

[31] ECF No. 2 at 2-7.

[32] *Flowers v. Francoise*, No. 22-1077, 2022 WL 2447899, *2 (3d Cir. July 6, 2022) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)).

[33] *Adger v. Coupe*, No. 21-1841, 2022 WL 777196, *3 (3d Cir. Mar. 14, 2022) (quoting *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016)).

[34] *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, *2 (3d Cir. Nov. 28, 2022) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)).

[35] *Moy v. DeParlos*, No. 1:18-CV-1575 2019 WL 4221072, at *3 (M.D. Pa. Sept. 5, 2019) (citing *Rode*, 845 F.2d at 1207).

[36] ECF No. 2 at 4, 6.