IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD LAIRD                                         CIVIL ACTION
           V.                                         NO. 23-CV-3429
J. TERRA, et.al.

## RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT

NOW COMES RICHARD LAIRD. PRO-SE PLAINTIFF IN THE ABOVE CAPTIONED CIVIL ACTION WITH THIS RESPONSE TO DEFENDANTS MOTION TO DISMISS AMENDED COMPLAINT.

1. ON 1-10-24 PLAINTIFF DID RECEIVE DEFENDANTS MOTION TO DISMISS AMENDED COMPLAINT. IT TOOK DEFENDANTS 14 DAYS TO SERVE PLAINTIFF WITH A COPY OF SAID MOTION.

2. DEFENDANTS CLAIM THAT AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR RELIEF. FALSE. SEE CONCLUSION OF AMENDED COMPLAINT. THROUGHOUT AMENDED COMPLAINT PLAINTIFF STATED; "SEE COMPLAINT, RESPONSE AND SUPPLEMENTAL RESPONSE WITH EXHIBITS" THEREBY INCORPORATING ANY AND ALL ARGUMENT PLAINTIFF MADE IN COMPLAINT, RESPONSE AND SUPPLEMENTAL RESPONSE WITH EXHIBITS INTO AMENDED COMPLAINT. INCLUDING BUT NOT LIMITED TO A CLAIM FOR RELIEF. SEE: COMPLAINT at PAGE #7, VI PRAYER FOR RELIEF.

3. DEFENDANTS MOTION TO DISMISS AMENDED COMPLAINT IS NOTHING MORE THAN AN ATTEMPT TO MUDDY THE WATERS OF THIS CIVIL ACTION BY MISSTATING THE FACTS. PLAINTIFF WILL NOT ENGAGE IN THIS SWAMPY BEHAVIOR. PLAINTIFF WILL ATTEMPT TO BRIEFLY POINT OUT A COUPLE OF FACTS FOR THIS COURTS CONSIDERATION AND ATTACH 3 EXHIBITS IN SUPPORT OF HIS ARGUMENT.

4. ON 8-8-22 THE DEFENDANTS, HARRY, TERRA, WYNDER, HENSLEY, ALL PRC MEMBERS, USED HEARSAY TO BEGIN THEIR PATTERN OF ABUSE/TORTURE AGAINST PLAINTIFF. HAVING PLAINTIFF PLACED IN SOLITARY CONFINEMENT, AND HOUSING HIM THERE FOR A PROLONGED PERIOD OF TIME. PROVIDING PLAINTIFF WITH

LITTLE TO NO INFORMATION AS TO THE WHO, WHAT, WHERE, WHEN OR WHY. NO DOCUMENTATION WAS PROVIDED TO PLAINTIFF SAVE FOR A SIMPLE 802 REPORT. AFTER 30+ YEARS IN SOLITARY, THE DEFENDANTS THREW PLAINTIFF BACK INTO SOLITARY TELLING HIM THAT HE'D BE THERE FOREVER. THIS IS A TACTIC THAT EMPLOYEES OF THE PADOC HAVE DEVELOPED AND ARE CURRENTLY ENGAGED IN USING IN AN ATTEMPT TO JUSTIFY THE USE OF PROLONGED SOLITARY CONFINEMENT. SEE EXHIBIT NO. 30. PLAINTIFF HEREIN STATES THAT PADOC EMPLOYEES DO IN FACT COMMUNICATE WITH EACH OTHER. DEVELOP OPERATIONAL TATICS. SHARE INFO. ETC. ALL OF THE NAMED DEFENDANTS HEREIN ARE AWARE OF THIS, AND DO ENGAGE IN THE ACTIONS DESCRIBED HEREIN.

5. HAD DEFENDANTS ACTIONS NOT BEEN BROUGHT TO LIGHT, PLAINTIFF WOULD STILL BE HOUSED IN SOLITARY CONFINEMENT. UNDERGOING THE TORTURES OF SOLITARY. SEE: EXHIBIT NO. 30.

6. MODERN SCIENCE NOW PROVES THAT SOLITARY CONFINEMENT IS DESTRUCTIVE/HARMFUL BOTH MENTALLY AND PHYSICALLY. THAT PROLONGED SOLITARY CONFINEMENT SHOULD NOT BE TOLERATED. THAT A PERIOD OF 14 DAYS OF SOLITARY CONFINEMENT SHOULD BE THE MAXIMUM TIME THAT A HUMAN BEING SHOULD SPEND IN SOLITARY. MUCH OF THIS EVIDENCE HAS ALREADY BEEN PRESENTED BEFORE THE COURTS. SEE: <u>REID V. WETZEL</u> NO. 18-CV-0176.

7. DISCOVERY WILL PROVIDE NECESSARY INFORMATION THAT WILL ALLOW PLAINTIFF TO FULLY DEVELOP AND PRESENT THE ISSUES RAISED IN COMPLAINT.

8. MODIFIED MOVEMENT RESTRICTION MEANS THAT ONE IS RESTRICTED FROM ENGAGING IN LAW AND LEISURE LIBRARY, GYM AND MAIN YARD. AS WELL AS ALL ACTIVITY DEPARTMENT OFFERINGS. SEE EXHIBIT NO. 31 and 32.

9. IF DEFENDANTS ARE PERMITTED TO CONTINUE VIOLATING PLAINTIFFS CONSTITUTIONAL RIGHTS, AND HUMAN RIGHTS. DEFENDANTS WILL TAKE THIS AS A GREEN LIGHT TO CONTINUE TO TORTURE/ABUSE PLAINTIFF. USING HEARSAY TO PLACE HIM BACK IN SOLITARY, "INDEFINITELY". FOREVER. DEFENDANTS WILL USE THAT GREEN LIGHT TO ABUSE/TORTURE OTHER PRISONERS. SEE: EXHIBIT NO. 30.

10. FINALLY, DEFENDANTS CLAIM "PROTECTION" AS JUSTIFICATION FOR THE USE OF PROLONGED SOLITARY CONFINEMENT ON PLAINTIFF. IF DEFENDANTS ARE AWARE OF WHO IS RESPONSIBLE FOR THIS ALLEGED "HIT". IF DEFENDANTS ARE AWARE OF WHO IS RESPONSIBLE FOR THIS ALLEGED THREAT. THEN WHY WAS YOUR PLAINTIFF THE ONE IN SOLITARY..? WHY IS YOUR PLAINTIFF THE ONE BEING SUBJECTED TO THE PUNITIVE RESTRICTIONS OF MODIFIED MOVEMENT..? PLAINTIFF DID NOT TAKE A "HIT" OUT ON ANYONE. PLAINTIFF DID NOT THREATEN ANYONE, PRISONER AND/OR STAFF MEMBER. WHY WAS YOUR PLAINTIFF TORTURED FOR 229 DAYS IN SOLITARY CONFINEMENT, AND NOW MODIFIED MOVEMENT..? DEFENDANTS HAVE NOT CLEARED UP THIS "THREAT". HAVE NOT TRANSFERRED THIS "THREAT". HAVE NOT MOVED THIS "THREAT" TO THE WEST SIDE OF THE PRISON, WHY..? DEFENDANTS, HARRY, TERRA, WYNDER, HENSLEY, ALL PRC MEMBERS, HAVE AND CONTINUE TOO VIOLATE PETITIONERS CONSTITUTIONAL RIGHTS. DEFENDANTS, HARRY, TERRA, WYNDER, HENSLEY, ALL PRC MEMBERS, HAVE AND CONTINUE TOO VIOLATE PETITIONERS HUMAN RIGHTS. PLEASE SEE: COMPLAINT, RESPONSE, SUPPLEMENTAL RESPONSE WITH EXHIBITS AND AMENDED COMPLAINT.

## CONCLUSION

THEREFORE PLAINTIFF RESPECTFULLY REQUESTS THIS HONORABLE COURT PERMIT PLAINTIFFS §1983 CIVIL RIGHTS ACTION TO PROCEED. GRANTING PLAINTIFF ALL RELIEF REQUESTED IN COMPLAINT at PAGE #7, IV PRAYER FOR RELIEF, AND/OR ANY OTHER RELIEF THIS HONORABLE COURT DEEMS APPROPRIATE.

s/ _[signature]_                                                    1.11.24
RICHARD LAIRD #AT0811                                               DATE
1200 MOKYCHIC DR
COLLEGEVILLE PA 19426

## DECLARATION

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY PERSONAL KNOWLEDGE.

s/ _[signature]_                                                    1.11.24
RICHARD LAIRD                                                       DATE

CERTIFICATE OF SERVICE

A TRUE AND CORRECT COPY OF THE FOREGOING HAS BEEN SERVED UPON THE FOLLOWING BY FIRST CLASS MAIL:

ALFRED J VOGT
ATTORNEYS FOR DEFENDANTS
OFFICE OF THE ATTORNEY GENERAL
1600 ARCH STREET, STE 300
PHILADELPHIA PA 19103

s/ R. Laird                                             1.11.24
RICHARD LAIRD                                           DATE
SCI-PHOENIX
1200 MOKYCHIC DR.
COLLEGEVILLE PA 19426

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD LAIRD                                       CIVIL ACTION
   V.                                               NO.23-3429
J. TERRA,et.al.

ORDER

NOW, THIS _____ DAY OF _____,2024. UPON CONSIDERING PLAINTIFFS RESPONSE TO DEFENDANTS MOTION TO DISMISS AMENDED COMPLAINT IT IS ORDERED THAT PLAINTIFFS §1983 CIVIL RIGHTS COMPLAINT BY A PRISONER WILL CONTINUE.


BY THE COURT:
_____

<u>LAIRD V. TERRA, et.al. NO. 23-CV-3429</u>
<u>EXHIBITS</u>

30. www.INQUIRER.COM. NEWS ARTICLE BY SAMANTHA MELAMED. PRISONERS OF Pa.'S SECRET SYSTEM OF INDEFINITE ISOLATION SUE FOR RELEASE AND DAMAGES.

31. PADOC MEMO FROM DEFENDANT WYNDER. TO: AFFECTED STAFF. RE: CAPITAL CASE INMATES ON MODIFIED STATUS.

32. CELL DOOR TAG FOR MODIFIED MOVEMENT. TAG IS PINK IN COLOR AND USES BLACK LETTERING.

EXHIBIT #30

EXHIBIT #30

# Prisoners of Pa.'s secret system of indefinite isolation sue for release and damages

Samantha Melamed : 7-9 minutes

The request forms sometimes came in tidy block printing, other times in a desperate scrawl. But the men in solitary confinement in the Security Threat Group Management Unit at the state prison at Fayette, south of Pittsburgh, kept asking the same question: "Why am I here?"

The STGMU, as it's known in the Pennsylvania Department of Corrections (DOC), is supposed to house about 40 gang members and others who pose a threat to the prison system.

"I wanted to know why am I going there," said Kareem Mazyck, 42, who spent two years in the unit that he described as a torture chamber, "and why is it taking so long to get out."

But the STGMU policies and procedures are confidential, unknown even to those living there.

The result, according to a federal class-action lawsuit filed by the incarcerated men there last fall — and amended this week by the nonprofit Abolitionist Law Center, the Pennsylvania Institutional Law Project and Dechert LLP — is a system that unconstitutionally "isolates people with serious mental illnesses in permanent solitary confinement."

The Department of Corrections doesn't comment on pending litigation, a spokesperson said.

A decade ago, the U.S. Department of Justice found that Pennsylvania uses "solitary confinement in a way that violates the rights of people with [serious mental illness]." Since then, major federal lawsuits have brought an end to death row solitary confinement in Pennsylvania and a pledge to eliminate long-term isolation for people deemed seriously mentally ill.

But as of last year about 1,100 people needing mental-health treatment remained in an ever-shifting alphabet soup of long-term isolation units.

Advocates want to force the state to close units such as the STGMU and the Intensive Management Unit (IMU), where men can remain for years on end — stuck in theoretical step-down programs that many, with deteriorating self-control and social skills, are unable to navigate successfully.

The lawsuit also seeks monetary damages for those who have survived what they say is a Kafkaesque system that violates their right to due process in disciplinary proceedings. "Placement in the unit is determined by secret evidence," the suit contends. "The operations of the unit are managed by secret policies."

The complaint contends that, to get around the DOC's previous agreement to keep people with serious mental illness out of solitary, the department has simply withheld evaluations, diagnoses, and care from many with very serious conditions.

chrome-extension://ecablfbgmdmgdllomnfinbmaelimcinh/data/reader/index.html?id=1073134172&url=https%3A%2F%2Fwww.inquirer.com%2Fnews...   1/3

E: 4814583 pg 54 of 69 for SHAWN WALKER

**READ MORE:** Long-term solitary confinement was created in Philly, and rooted in racism

Among the plaintiffs: a man who attempted suicide 10 times over two years in solitary confinement, yet is not considered seriously mental ill; a man who became convinced that the guards were poisoning his food, stopped eating, and lost 20 pounds; and a man who began punching the walls until he bled, then wrote, "Kill me, I'm ready to go," in his own blood.

Mazyck, who served four years in state prison for selling fake drugs in Lackawanna County, said each day on the STGMU was "hell." The paranoid thoughts rattling in his mind were exacerbated by the chaos all around, he said, including brutal assaults by correctional officers, and what he described as a pattern of officers baiting prisoners to verbally harass one another. Under those conditions, it took the men on the unit more than six months to draft their lawsuit, shouting or passing papers from one cell to the next with only minimal access to an on-unit law library.

According to the filings, the harsh conditions of the STGMU — including 22 to 24 hours a day locked in a cell; lights that stay on 24/7; and exercise confined to a cage — have led to ever more deterioration, yet treatment is minimal and conducted at the cell door. A majority of those interviewed by the Abolitionist Law Center's lawyers had attempted suicide there, according to Bret Grote, the organization's legal director.

A series of written grievances submitted over the course of several months by Michael Scullen, who is serving a 10- to 20-year sentence for arson in Schuylkill County, illustrates that cycle. According to the documents, filed along with the lawsuit last fall, he had been diagnosed bipolar, but that diagnosis was removed while he was at STGMU.

"I have started seeing a dark-man-like shadow in the corner of my cell. It wants to be called Shareef," he wrote to staff in April 2022. "I used to take Haldol when I was hallucinating the last time. I really need to be put back on now."

A few weeks later, on May 5, he wrote an update: "I'm now able to converse with him on a regular basis. He is either a hallucination or I have a celly."

On May 9, he followed up again.

"My celly has finally fallen asleep. I don't know when I'll get the chance to write this again. He's always watching! Me and my cellmate Shareef are not getting along. He's a bully and a tough guy and me and him are gonna end up fighting each other or worse."

The response was one terse sentence: "You do not have a cellmate."

The Department of Corrections, which houses about 37,600 people, as of last year had identified 1,363 people it deemed were "validated" members of what it calls security threat groups, including 215 Kensington, Bloods, Crips, Dead Man Inc., Latin Kings, Neta, and white supremacists.

> A complaint filed last year by a man in the Security Threat Group Management Unit shows hallucinations, a sign of serious mental illness. Prisoners allege such diagnoses are being avoided to keep them in long-term isolation. Court records

chrome-extension://ecabifbgmdmgdllomnfinbmaellmcinh/data/reader/index.html?id=1073134172&url=https%3A%2F%2Fwww.inquirer.com%2Fnews... 2/3

f: 4814583 pg 55 of 69 for SHAWN WALKER

An Inquirer investigation found that the DOC holds Black prisoners in higher security settings than white ones. Black people accounted for 36% of minimum-security prisoners, but 53% of those in close or maximum security prisons and 80% of those on indefinite solitary confinement.

Numerous researchers have identified health consequences of solitary confinement, from psychosis to declining cognitive function, and an extremely elevated risk of self-harm. Many have also concluded that solitary is bad for public safety. One found that in the first few months after they return home, people released from isolation, instead of from general population, were more likely to commit violent crimes.

About a year ago, Mazyck was released from the STGMU. He never completed the program, which was necessary to make parole — instead, he served his maximum sentence. He found a warehouse job and an apartment, but the adjustment was rough: He had to relearn how to talk without yelling, and how to be among people again.

His instinct these days is to retreat into solitude, but he said he's proud to remain part of the lawsuit.

"My hope is to shed light about what's going on there and to end solitary confinement for everybody, because all it's doing is deteriorating your brain," he said. "It makes a person that's already angry angrier. It makes a person that's sick sicker."

Acknowledgment

The Inquirer's journalism is supported in part by The Lenfest Institute for Journalism and readers like you. News and Editorial content is created independently of The Inquirer's donors. Gifts to support The Inquirer's high-impact journalism can be made at inquirer.com/donate. A list of Lenfest Institute donors can be found at lenfestinstitute.org/supporters.

chrome-extension://ecabifbgmdmgdliomnfinbmaelimcinh/data/reader/index.html?id=1073134172&url=https%3A%2F%2Fwww.inquirer.com%2Fnews...   3/3

:f: 4814583 pg 56 of 69 for SHAWN WALKER

EXHIBIT #31

EXHIBIT #31


**pennsylvania**
DEPARTMENT OF CORRECTIONS

To: Affected Staff

From: Nathan Wynder
DSFM

RE: Capital Case Inmates on Modified Status

Date: March 23, 2023

Effective March 24, 2023 the below Capital Case inmates will be returning to P unit to be housed indefinitely in modified housing status as also outlined below:

| AT0811 | LAIRD, RICHARD |
|--------|----------------|
| GL7509 | HOUSER, DARIAN |
| JQ0063 | PATTERSON, MAURICE |
| MA2585 | CLEMONS, JORDAN |
| QB7565 | HOLT, RAHMAEL |

These inmates shall be housed in cells PA1031-PA1036 only. These cells will have a distinct door tag indicating the inmates under modified status.

Modified Status Details
- No movement off the housing unit with a staff escort.
    - Inmates shall not be restrained for escort
    - Escorts can be up to one-on-five, if all inmates are going to the same location.
    - The Corrections Officer will be one of the five (5) already assigned to the unit, per shift, and will not take from the complement.

- Off unit movement should be limited to the following:
    - **Visiting room.** Officers may drop inmate off and return at conclusion of visit to escort back to unit.
    - **One religious service per week.** Inmates must be seated distinctly separately from all other inmates participating in the service. Officers must remain for the duration of service.
    - **Insulin and Medication Line.** These inmates will be called first for all medication lines on the East; identified as "P unit special medication."
    - **Medical appointments.** Officer must remain with inmate for duration of appointment.
    - Inmates may not attend main yard.

- On Unit Activities:
    - Inmates are able to participate in on-unit congregate meals in the dayroom.

EXHIBIT #32

## MODIFIED MOVEMENT

## INMATES UNDER DIRECT ESCORT WHILE OFF UNIT

