**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD LAIRD** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 23-3429** |
| | : | |
| **J. TERRA, WYNDER, HENSLEY, ALL** | : | |
| **PROGRAM REVIEW COMMITTEE** | : | |
| **MEMBERS AT SCI PHOENIX** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                    **January 31, 2024**

Correctional officials placed Richard Laird in 229 days of solitary confinement. Officials then designated him for modified movement restrictions including with an escort around the Facility. The incarcerated Mr. Laird again hopes to plead the personal involvement of the persons he is suing for constitutional violations. Mr. Laird pleads Superintendent Terra's, Deputy Superintendents Wynder's and Hensley's, and the Program Review Committee Members' personal involvement in his placement in solitary confinement. Mr. Laird pleads Superintendent Terra's and the Review Committee Members' personal involvement in his placement on modified movement restrictions. Mr. Laird does not plead Secretary Harry's personal involvement in either his placement in solitary confinement or his placement on modified movement restrictions. Mr. Laird does not plead Deputy Superintendents Wynder's or Hensley's personal involvement in his placement on modified movement restrictions.

But even pleading the personal involvement of some officials, Mr. Laird does not plead his 229 days in solitary confinement, without more, violates his Eighth or Fourteenth Amendment rights. Mr. Laird also does not plead modified movement restrictions consisting of an escort during his movements around State Correctional Institution Phoenix violate his free exercise rights, right of access to the courts, or his Eighth or Fourteenth Amendment rights.

I. **Alleged pro se facts.**

The Commonwealth detains Richard Laird at SCI Phoenix. The Facility placed him in solitary confinement for 229 days beginning on August 8, 2022.[1] The Facilty did not issue a misconduct report before placing Mr. Laird in solitary confinement. [2] Mr. Laird could not bring his legal file or any other property other than underwear to solitary confinement.[3] Mr. Laird's stay in solitary confinement exposed him to "extreme deprevations [sic]."[4]

Facility officials then placed Mr. Laird on "modified movement" following solitary confinement.[5] Mr. Laird is fully restricted from accessing the main yard, gym, and law and leisure library at the Facility because of his modified movement conditions.[6] Mr. Laird cannot practice his religion of choice nor access the courts because of his modified movement conditions.[7]

***Superintendent Joseph Terra's involvement in Mr. Laird's conditions of confinement.***[8]

Facility Superintendent Joseph Terra ran SCI Phoenix's Program Review Committee.[9] The Review Committee held a periodic review of incarcerated persons' placements in solitary confinement.[10] The Review Committee met to discuss Mr. Laird's placement in solitary confinement but failed to "call [Mr. Laird] to attend the review."[11] Superintendent Terra's failure to call Mr. Laird to his conditions of confinement review meeting caused Mr. Laird "stress, anxiety, [and] depression."[12] Superintendent Terra ordered Mr. Laird remain in solitary confinement.[13] Superintendent Terra "subject[ed]" Mr. Laird to 229 days in solitary confinement thereby causing Mr. Laird irreparable harm.[14]

Superintendent Terra allowed Mr. Laird to appear before the Review Committee on September 14, 2022.[15] Superintendent Terra provided Mr. Laird no information about Mr. Laird's confinent, acted "abrasive[ly,]" and instructed the staff to remove Mr. Laird from the meeting.[16] Superintendent Terra ordered Mr. Laird's placement on modified movement restrictions.[17]

Mr. Laird questioned Superintendent Terra four times after Mr. Laird's removal from solitary confinement about Mr. Laird's modified movement restrictions.[18] Superintendent Terra told Mr. Laird on May 24, 2023 he would not be removed from modified movement restrictions "anytime soon" and stated he earlier told Mr. Laird he would "never get out of the hole."[19] Superintendent Terra then told Mr. Laird on August 8, 2023 he "[did not] know yet" when the Facility would remove Mr. Laird's modified movement restrictions.[20] Superintendent Terra told Mr. Laird almost two weeks later he would be removed from modified movement restrictions at "this time."[21] Superintendent Terra then told Mr. Laird "no relief coming" on November 17, 2023.[22]

Superintendent Terra is committing "torture, discrimination, [and] official oppression against" Mr. Laird.[23] Superintendent Terra's placement of Mr. Laird in solitary confinement violated Mr. Laird's Eighth and Fourteenth Amendment rights.[24] Superintendent Terra prevents "meaningful review" of Mr. Laird's modified movement restriction.[25] Superintendent Terra is "creating a hostile environment" for Mr. Laird.[26]

### Deputy Superintendent Nathan Wynder's involvement in Mr. Laird's conditions of confinement.

Facility Deputy Superintendent Nathan Wynder "sat on and/or headed up" the Review Committee.[27] Facility Deputy Superintendent Wynder "order[ed] [Mr. Laird] to remain in solitary confinement."[28]

Mr. Laird spoke with Deputy Superintendent Wynder several times since Mr. Laird's release from solitary confinement.[29] Deputy Superintendent Wynder told Mr. Laird on April 21, 2023 "nothing new" in response to Mr. Laird questioning his release from modified movement restrictions.[30] Deputy Superintendent Wynder told Mr. Laird two weeks later he will "never get[]

off modified movement."[31] Deputy Superintendent Wynder "would not answer questions about" Mr. Laird's modified movement restrictions on September 28, 2023.[32]

Deputy Superintendent Wynder helped create modified movement restrictions and is charged with their execution.[33] Deputy Superintendent Wynder created the modified movement restrictions violating Mr. Laird's First, Eighth, and Fourteenth Amendment rights.[34] Deputy Superintendent Wynder is committing "torture, discrimination [and] official oppression" against Mr. Laird.[35] Deputy Superintendent Wynder prevents "meaningful review" of Mr. Laird's modified movement restrictions.[36] Deputy Superintendent Wynder is "creating a hostile environment" for Mr. Laird.[37]

### Deputy Superintendent Charles Hensley's involvement in Mr. Laird's conditions of confinement.

Deputy Superintendent Charles Hensley chaired the Review Committee on multiple occasions during Mr. Laird's stay in solitary confinement.[38] Deputy Superintendent Hensley ordered Mr. Laird remain in solitary confinement.[39] Deputy Superintendent Hensley told Mr. Laird he "would never be released from the hole."[40]

Deputy Superintendent Hensley told Mr. Laird he would never be released from modified movement and the restrictions are indefinite.[41] Deputy Superintendent Hensley is responsible for the modified movement restrictions imposed on Mr. Laird.[42] Deputy Superintendent Hensley told Mr. Laird on May 3, 2023 "nothing has changed" concerning Mr. Laird's modified movement restrictions.[43] Deputy Superintendent Hensley told Mr. Laird on September 29, 2023 he had "no answer" for Mr. Laird about Mr. Laird's question how much longer he would be on modified movement.[44]

Deputy Superintendent Hensley is committing "torture, discrimination, [and] official oppression" against Mr. Laird.[45] Deputy Superintendent Hensley prevents "meaningful review" of

Mr. Laird's modified movement restrictions.[46] Deputy Superintendent Hensley is "creating a hostile environment" for Mr. Laird.[47]

### *All Review Committee Members' involvement in Mr. Laird's conditions of confinement.*

All of the Review Committee Members are "responsible for ordering [Mr. Laird's] continued confinement in and/or the release from solitary confinement housing."[48] The Review Committee Members are responsible for "ordering . . . [Mr. Laird's] prolonged confinement to the brutal tortures of solitary confinement and/or modified movement restrictions."[49] The Review Committee Members are responsible for the modified movement restrictions imposed on Mr. Laird.[50] Mr. Laird does not know the Review Committee Members' names.[51]

The Review Committee Members are responsible for Mr. Laird's "torture, discrimination, [and] official oppression."[52] The Review Committee Members prevent meaningful review of Mr. Laird's modified movement restrictions.[53] The Review Committee Members are responsible for violating Mr. Laird's constitutional rights.[54] The Review Committee Members are "creating a hostile environment" for Mr. Laird.[55]

### *Secretary Laurel Harry's involvement in Mr. Laird's conditions of confinement.*

Pennsylvania Department of Corrections Secretary Dr. Laurel Harry is "aware of and in full agreement with" Mr. Laird's previous placement in solitary confinement and current placement on modified movement restrictions.[56]

Mr. Laird wrote to Secretary Harry's office requesting assistance in removing his modified movement conditions.[57] Mr. Laird does not plead the date on which he wrote to Secretary Harry's office.[58] Mr. Laird appealed to the "central office" about his conditions of confinement.[59] Mr. Laird's criminal attorneys contacted the "central office" by e-mail and telephone.[60] Mr. Laird's civil attorneys in a separate civil proceeding contacted the chief counsel of the Department of

Corrections about Mr. Laird's conditions of confinement.[61] Someone advised Mr. Laird Secretary Harry is "aware" of Mr. Laird's conditions of confinement.[62]

Secretary Harry has the power to "order" Mr. Laird removed from modified movement restrictions.[63] Secretary Harry had the power to "order" Mr. Laird removed from solitary confinement.[64] Secretary Harry failed to exercise this power and continues to fail to exercise this power.[65] Secretary Harry's failure to order Mr. Laird's removal from solitary confinement and modified movement restrictions "condones [Mr. Laird's] torture, discrimination, [and] official oppression."[66] Secretary Harry's failure to order Mr. Laird's removal from solitary confinement and modified movement restrictions constitutes Secretary Harry's "agree[ment]" to the lack of "meaningful review" of Mr. Laird's modified movement restrictions.[67] Secretary Harry's failure to order violates Mr. Laird's constitutional rights.[68] Secretary Harry's failure to order creates a "hostile environment" for Mr. Laird.[69]

## II.   Analysis

Mr. Laird sued Superintendent Terra, Deputy Superintendents Wynder and Hensley, the Program Review Committee Members, and Secretary Harry challenging his placement in solitary confinement and modified movement restrictions through section 1983.[70] We dismissed his first attempt at pleading their liability.[71] Mr. Laird amended to plead facts about the Facility officials' personal involvement in his placement in solitary confinement and his current modified movement restrictions.[72] Mr. Laird pleads Superintendent Terra, Deputy Superintendents Wynder and Hensley, and the Program Review Committee Members ordered him to remain in solitary confinement.[73] Mr. Laird pleads Secretary Harry is "aware" of Mr. Laird's placement in solitary confinement and current modified movement restrictions.[74] Mr. Laird pleads Superintendent Terra and the Review Committee Members ordered Mr. Laird's placement on modified movement.[75]

Mr. Laird pleads Deputy Superintendents Wynder, Hensley, and the Review Committee Members are responsible for creating modified movement restrictions.[76]

The Facility officials move to dismiss Mr. Laird's constitutional claims.[77] The Facility officials argue Mr. Laird fails to state an Eighth Amendment claim because Mr. Laird fails to allege the Facility officials acted with deliberate indifference to Mr. Laird and his 229-day stay in solitary confinement does not constitute a sufficiently serious deprivation.[78] The Facility officials argue Mr. Laird fails to plead the personal involvement of Deputy Superintendents Wynder and Hensley and Secretary Harry.[79] The Facility officials argue Mr. Laird's placement on modified movement restrictions did not violate his procedural due process rights because freedom from an escort around prison is not a protected liberty interest.[80] The Facility officials argue Mr. Laird's placement in solitary confinement did not violate his procedural due process rights because placement in solitary confinement for less than one year does not implicate a constitutionally protected liberty interest.[81] The Facility officials argue Mr. Laird's placement in solitary confinement does not "shock the conscience" necessary to allege a substantive due process claim.[82] The Facility officials argue Mr. Laird fails to plead the modified movement restrictions prevent him from practicing his religion of choice because modified movement is "simply an escort" and does not prevent him from accessing activities.[83] The Facility officials argue Mr. Laird fails to plead an access to court claim because he does not allege a loss or rejection of a legal claim.[84] The Facility officials argue Mr. Laird's amended Complaint fails to request relief requiring dismissal.[85]

We find Mr. Laird pleads Superintendent Terra's, Deputy Superintendents Wynder's and Hensley's, and the Review Committee Members' personal involvement in his placement in solitary confinement but does not plead Secretary Harry's personal involvement in his placement in solitary confinement. We find Mr. Laird pleads Superintendent Terra's and the Review Committee Members' personal involvement in his placement on modified movement restrictions but does not

plead Deputy Superintendents Wynder's and Hensley's, and Secretary Harry's personal involvement in his placement on modified movement restrictions.

We find Mr. Laird does not plead his placement in solitary confinement constitutes cruel and unusual punishment. We find Mr. Laird does not plead his placement in solitary confinement violated his procedural due process rights.

We find Mr. Laird does not plead his modified movement restrictions prevent him from practicing his religion of choice. We find Mr. Laird does not plead his modified movement restrictions denied him access to courts because he does not allege a lost chance to pursue a legal claim. We find Mr. Laird does not plead his modified movement restrictions constitute cruel and unusual punishment. We find Mr. Laird does not plead his modified movement restrictions violate his procedural due process rights.

### A. Mr. Laird pleads personal involvement for some but not all of the Facility Officials.

Mr. Laird pleads Superintendent Terra, Deputy Superintendents Wynder and Hensley, and the Program Review Committee Members ordered his placement in solitary confinement.[86] Mr. Laird pleads Secretary Harry is "aware of" Mr. Laird's placement in solitary confinement.[87] Mr. Laird pleads Superintendent Terra and the Review Committee Members ordered his placement on modified movement restrictions.[88] Mr. Laird pleads Deputy Superintendents Wynder and Hensley and the Review Committee Members are responsible for creating modified movement restrictions.[89] Mr. Laird pleads Secretary Harry is "aware of" Mr. Laird's modified movement restrictions.[90]

The Facility officials counter Mr. Laird fails to plead Deputy Superintendent Wynder's and Hensley's and Secretary Harry's personal involvement in his conditions of confinement.[91] We find Mr. Laird pleads the personal involvement of Superintendent Terra, Deputy Superintendents

8

Wynder and Hensley, and the Program Review Committee in his placement in solitary confinement by ordering Mr. Laird into solitary confinement. We find Mr. Laird does not plead Secretary Harry's personal involvement in Mr. Laird's placement in solitary confinement. We find Mr. Laird pleads Superintendent Terra's and Review Committee Members' personal involvement in Mr. Laird's placement on modified movement restrictions. We find Mr. Laird does not plead Deputy Superintendents Wynder and Hensley and Secretary Harry's personal involvement in his placement on modified movement restrictions.

Incarcerated persons pleading prison officials violated his civil rights must allege each official's personal involvement in the complained of conduct.[92] The incarcerated person "must state with particularity each defendant's participation in—or actual knowledge of and acquiescence to—the alleged wrongs."[93] Personal involvement "requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'"[94] The incarcerated person must allege more than constructive knowledge and instead plead the prison official had "actual knowledge of the conduct."[95] Our Court of Appeals instructs review of a grievance or an appealed grievance does not establish personal involvement in the complained of conduct.[96]

      **i.  Mr. Laird pleads Superintendent Terra's, Deputy Superintendent Wynder's and Hensley's, and the Review Committee Members' personal involvement in his placement in solitary confinement but does not plead Secretary Harry's personal involvement in his placement in solitary confinement.**

Mr. Laird pleads Superintendent Terra, Deputy Superintendents Wynder and Hensley, and the Review Committee Members ordered his placement in solitary confinement.[97] Mr. Laird pleads Secretary Harry is "aware of" Mr. Laird's placement in solitary confinement.[98] We find Mr. Laird pleads Superintendent Terra's, Deputy Superintendents Wynder's and Hensley's, and the Review Committee Members' personal involvement in his placement in solitary confinement because they ordered his placement in solitary confinement. Mr. Laird does not plead Secretary Harry's personal

involvement in his placement in solitary confinement because Mr. Laird does not plead Secretary Harry's actions resulted in Mr. Laird's placement in solitary confinement.

We are guided by Judge Kelly's analysis finding a warden's personal involvement in an incarcerated person's placement in solitary confinement.[99] The incarcerated person in *Martin v. Fayette County Prison* alleged a corrections officer placed him in solitary confinement and the Fayette County Prison warden "affirmed" the decision to place him in solitary confinement.[100] The incarcerated person sued the prison and its warden alleging an Eighth Amendment conditions of confinement claim.[101] Judge Kelly held the warden's affirmance of the incarcerated person's placement in solitary confinement sufficient to plead the warden's personal involvement in the incarcerated person's Eighth Amendment claim.[102]

We are also guided by Judge Dodge dismissing an incarcerated person's Eighth Amendment claim against a correctional Superintendent for lack of personal involvement where the superintendent lacked a role in the incarcerated person's placement in restricted housing.[103] SCI Greene correctional officers placed the incarcerated person in *Hall v. Zaken* in restricted housing after finding synthetic marijuana in his cell.[104] The incarcerated person alleged several SCI Greene officers repeatedly fabricated evidence to keep him in restricted housing but failed to plead direct action by the superintendent.[105] Judge Dodge dismissed the Eighth Amendment claim against the superintendent finding the incarcerated person failed to allege the superintendent "had any role in [the incarcerated person's] placement on the [restrictive release list], made recommendations about his continued status there or had any dialog with [the incarcerated person] about his prolonged solitary confinement."[106]

A correctional official's failure to prevent placement in solitary confinement or order release from solitary confinement does not create personal involvement.[107] The incarcerated person in *Reaves v. Rossman* alleged placement in solitary confinement.[108] The incarcerated person

appealed his placement in solitary confinement.[109] The former and current superintendent of SCI Benner Township failed to respond to the incarcerated person's appeal.[110] The incarcerated person sued both superintendents through section 1983 for their failure to respond to his appeal of his grievance denials.[111] Judge Saporito dismissed the incarcerated person's claim finding an official's failure to respond to a grievance or an appeal of a grievance denial does not create personal involvement.[112]

Superintendent Terra, Deputy Superintendents Wynder and Henlsey, and the Review Committee Members are personally involved in Mr. Laird's placement in solitary confinement. Mr. Laird pleads Superintendent Terra, Deputy Superintendents Wynder and Hensley, and the Review Committee Members "ordered" him to solitary confinement.[113] This level of involvement is greater than the warden in *Martin* who affirmed another correctional officer's order to place the incarcerated person in solitary confinement.[114] A direct order demonstrates more involvement than affirming another's direct order. Directly ordering Mr. Laird stay in solitary confinement is similar to the "role" in an incarcerated person's placement in solitary confinement Judge Dodge found sufficient to plead personal involvement.[115] Mr. Laird pleads Superintendent Terra's, Deputy Superintendent Wynder's and Hensley's, and the Review Committee Members' personal involvement in his placement in solitary confinement.

We dismiss Mr. Laird's claims against Secretary Harry concerning Mr. Laird's placement in solitary confinement for not alleging Secretary Harry's personal involvement. Mr. Laird pleads Secretary Harry is "aware of" Mr. Laird's placement in solitary confinement.[116] Mr. Laird attempts to tie Secretary Harry's awareness to his conditions of confinement by alleging he wrote to the Pennsylvania Department of Corrections central office, appealed his grievance denials to the central office, and his lawyers in a separate case contacted the Office of the Chief Counsel for the Department of Corrections.[117] Mr. Laird further alleges Secretary Harry's "lack of a [sic] order"

releasing Mr. Laird from solitary confinement demonstrates Secretary Harry's personal involvement in Mr. Laird's conditions of confinement.[118] Mr. Laird's allegations of a correctional official's failure to respond to appeals of grievance denials and other one-way contact with a correctional official is the type of contact Judge Saporito found insufficient to allege personal involvement.[119] We also find Mr. Laird's alleged contacts are insufficnet to show Secretary Harry's personal involvement in his placement in solitary confinement.

> ### ii. Mr. Laird pleads Superintendent Terra's and the Review Committee Members' personal involvement in his placement on modified movement restrictions but does not plead Deputy Superintendent Wynder's and Hensley's, and Secretary Harry's personal involvement in his placement on modified movement restrictions.

Mr. Laird pleads Superintendent Terra and the Review Committee Members ordered Mr. Laird's placement on modified movement restrictions.[120] Mr. Laird pleads Deputy Superintendents Wynder and Hensley and the Review Committee Members are responsible for creating modified movement restrictions.[121] Mr. Laird pleads Secretary Harry is "aware of" Mr. Laird's modified movement restrictions.[122] We find Mr. Laird pleads Superintendent Terra's and the Review Committee Members' personal involvement in Mr. Laird's placement on modified movement restrictions for the same reasons he pleads Superintendent Terra's and the Review Committee Members' personal involvement in Mr. Laird's placement in solitary confinement. But again Mr. Laird does not plead Deputy Superintendents Wynder's and Hensley's personal involvement because creating the complained of restriction, without more, is insufficient to create personal involvement. Mr. Laird also does not plead Secretary Harry's personal involvement in Mr. Laird's placement on modified movement restrictions for the same reasons Mr. Laird did not plead Secretary Harry's personal involvement in Mr. Laird's placement in solitary confinement.

We are guided by Judge Savage's recent review of personal involvement concerning the creators and implementers of specialized confinement.[123] In *Wayne v. Clark*, SCI Albion officials

placed the incarcerated person in restricted housing for fighting another incarcerated person.[124] Unnamed correctional officials later placed the incarcerated person on the restricted release list.[125] The incarcerated person alleged only Secretary Wetzel or the Executive Deputy Secretary for Institutional Operations can place or remove incarcerated persons from the restricted release list.[126] The incarcerated person sued several Department of Corrections superintendents and Secretary Wetzel alleging Eighth and Fourteenth Amendment claims.[127] The incarcerated person alleged the superintendents "were responsible for overall operations and oversight of [restricted housing]" and therefore had personal involvement in the incarcerated person's placement in restricted housing and on the restricted release list.[128] Judge Savage dismissed the incarcerated person's claims against the superintendents finding oversight over and concern for the operation of restricted housing "does not allege . . . any role in placing [the incarcerated person] on the [restricted release list] or in the [restricted housing unit]."[129]

Mr. Laird alleges Deputy Superintendents Wynder and Hensley oversee modified movement restrictions. Mr. Laird alleges Deputy Superintendent Wynder "is responsible for much of the way modified movement restrictions are carried out" and "assisted in the drawing up of the modified movement restrictions and is seeing to it that the modified movement restrictions are carried out."[130] Mr. Laird alleges Deputy Superintendent Hensley "is responsible for much of the way the modified movement restrictions is [sic] constructed and carried out."[131] Deputy Superintendents Wynder's and Hensley's connection to Mr. Laird's modified movement restrictions is similar to the oversight exercised by the *Wayne* superintendents Judge Savage found insufficient to create personal involvement.[132] Oversight of Mr. Laird's modified movement restrictions does not create personal involvement. We find Mr. Laird does not plead Deputy Superintendents Wynder's and Hensley's personal involvement in his placement on modified movement restrictions.

13

### B. Mr. Laird does not plead his 229-day housing in solitary confinement constitutes cruel and unusual punishment.

Mr. Laird pleads his 229-day placement in solitary confinement violated his Eighth Amendment right to be free from cruel and unusual punishment because he now suffers "mental and/or emotional distress, [an] eating disorder, sleeplessness, nightmares, anxiety, depression, stress, weight loss, muscle loss, [and] intestinal distress."[133] The Facility officials argue Mr. Laird fails to plead an Eighth Amendment claim because 229 days in solitary confinement does not, in and of itself, constitute a sufficiently serious deprivation warranting relief.[134] We dismiss Mr. Laird's Eighth Amendment claim because he does not plead his solitary confinement for several months constitutes a sufficiently serious deprivation.

The Eighth Amendment protects incarcerated persons from cruel and unusual punishment.[135] Incarcerated persons alleging Eighth Amendment claims challenging their conditions of confinement must satisfy an objective and subjective test.[136] The incarcerated person must allege the deprivation associated with their conditions of confinement is objectively "sufficiently serious."[137] The incarcerated person must also allege the officials responsible for their conditions of confinement acted with deliberate indifference.[138]

Our Court of Appeals measures whether a particular condition of confinement is "objectively serious" by "society's view of the risk to the prisoner's health and safety, that is, 'whether it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'"[139] Placement in solitary confinement, on its own, does not violate the Eighth Amendment.[140] Prison officials must ensure incarcerated persons housed in solitary confinement do not lack "food, sanitation and medical care."[141] Our colleagues reviewing Eighth Amendment conditions of confinement claims based on placement in solitary confinement consider the incarcerated person's

duration in solitary confinement in determining the first part of the conditions of confinement test.[142]

We are guided by Judge Eddy denying dismissal of an Eighth Amendment claim where the incarcerated person pleaded a multi-year stay in solitary confinement.[143] The incarcerated person in *Noble v. Wetzel* alleged SCI Greene officials placed him in solitary confinement for more than five years.[144] The incarcerated person pleaded SCI Greene officials denied him "basic human needs" and knew the risks associated with placement in solitary confinement.[145] Judge Eddy allowed the conditions of confinement claim to proceed, finding five years in solitary confinement "sets forth a plausible [Eighth Amendment claim]."[146]

Our Court of Appeals dismissed a conditions of confinement claim where the incarcerated person spent fewer than five years in solitary confinement.[147] The incarcerated person in *Green v. Coleman* alleged his four-year placement in solitary confinement "caus[ed] him psychological distress."[148] The incarcerated person did not plead SCI Fayette officials deprived him of food, sanitation, or exercise.[149] Our Court of Appeals dismissed the incarcerated person's Eighth Amendment claim holding placement in solitary confinement for fewer than five years and failure to allege a deprivation of food or other "human need[s]" save for medical care did not constitute a sufficiently serious deprivation.[150]

Judge Saporito's reasoning dismissing an Eighth Amendment conditions of confinement claim alleging eleven months in solitary confinement is also persuasive.[151] In *Reaves v. Rossman*, SCI Benner Township officials placed the incarcerated person in solitary confinement "indefinitely."[152] The incarcerated person alleged a diagnosis of "an unspecified serious mental illness and an unspecified cognitive learning disability."[153] Placement in solitary confinement caused the incarcerated person to experience "stress and anxiety, weight loss, and loss of sleep" exacerbating his previously diagnosed mental illness.[154] Judge Saporito dismissed the incarcerated

person's Eighth Amendment claim finding "absent other significant deprivations" eleven months in solitary confinement is "insufficient, standing alone, to establish a violation of [the incarcerated person's] Eighth Amendment rights."[155]

Mr. Laird's several-month placement in solitary confinement alone is not sufficient for an Eighth Amendment claim. He again does not plead the state actors deprived him of food, sanitation or clothing. He does not plead conditions which constitute objectively serious conditions of confinement necessary to allege an Eighth Amendment claim. Mr. Laird spent 229 days in solitary confinement.[156] His stay of 229 days is less than the eleven months Judge Saporito found uncompelling in *Reaves*.[157] And like the incarcerated person in *Reaves*, Mr. Laird does not plead the Facility officials deprived him of a basic human need by placing him in solitary confinement.[158]

We are aware and sympathetic to the dangers of solitary confinement particularly to mental health. But Mr. Laird does not plead the necessary deprivations our Court of Appeals and our colleagues consider violative of the Eighth Amendment. We dismiss Mr. Laird's Eighth Amendment claims against Superintendent Terra, Deputy Superintendents Wynder and Hensley, and the Review Committee Members for his placement in solitary confinement.

### C. Mr. Laird does not plead placement in solitary confinement violated his procedural due process rights.[159]

Mr. Laird pleads state actors' decision to place him in solitary confinement violates his Fourteenth Amendment rights.[160] The Facility officials argue Mr. Laird fails to allege a Fourteenth Amendment procedural due process claim because his placement in solitary confinement for less than one year does not implicate a liberty interest.[161] We find Mr. Laird does not plead a Fourteenth Amendment procedural due process claim because several months in solitary confinement does not amount to an atypical and significant hardship.

An incarcerated person alleging a procedural due process claim must plead Facility officials deprived them of a protected liberty or property interest and provided a "constitutionally deficient" procedure through which to challenge the deprivation.[162] An incarcerated person has a liberty interest where a prison official imposes "atypical and significant hardship on the [incarcerated person] in relation to the ordinary incidents of prison life."[163] Our Court of Appeals instructs we consider "(1) the amount of time spent in [solitary confinement]; and (2) whether the conditions of [solitary confinement] were significantly more restrictive than those imposed on other inmates."[164] Our Court of Appeals has held seven months in solitary confinement does not implicate a protected liberty interest.[165]

We are guided by our Court of Appeals's guidance when facing much different facts: several years in solitary confinement coupled with pleaded facts about the differences between solitary confinement and other forms of incarceration implicate a protected liberty interest.[166] The incarcerated person in *Allah v. Bartkowski* alleged spending six years in solitary confinement.[167] The incarcerated person pleaded other inmates in adjacent cells suffered from mental illness and "create[d] disturbances[,]" and created unsanitary conditions causing "rodent infestation" and "noxious stenches."[168] Our Court of Appeals noted the incarcerated person pleaded differences between solitary confinement and other conditions of confinement including non-solitary confinement incarcerated persons could purchase canteen items and have uncaged outdoor recreation.[169] Our Court of Appeals held the incarcerated person stated a protected liberty interest after "read[ing] together" the pleaded "duration and conditions of confinement" in solitary confinement.[170]

We are also guided by Judge Saporito dismissing a procedural due process claim concluding eleven months in solitary confinement did not amount to a protected liberty interest.[171] The incarcerated person in *Reaves v. Rossman* spent eleven months in solitary confinement.[172]

Judge Saporito acknowledged there are certain circumstances in which placement in solitary confinement violates a protected liberty interest.[173] Judge Saporito dismissed the procedural due process claim concluding an eleven-month period of solitary confinement did not give rise to a protected liberty interest.[174]

Mr. Laird pleads an insufficient period of time in solitary confinement but does not plead facts comparing the incidents of solitary confinement and other forms of incarceration requiring we dismiss his procedural due process claim for failing to allege a protected liberty interest. Mr. Laird describes solitary confinement as exhibiting "brutally harsh conditions."[175] But Mr. Laird does not distinguish the ways in which solitary confinement is different than other forms of incarceration. Our Court of Appeals considered pleaded facts about the differences between solitary confinement and other forms of incarceration in holding the incarcerated person in *Allah* pleaded a protected liberty interest.[176] But Mr. Laird pleads an insufficient amount of time spent in solitary confinement necessary to create a protected liberty interest. Mr. Laird spent 229 days in solitary confinement.[177] His placement of 229 days is fewer than the eleven months Judge Saporito found insufficient to create a protected liberty interest in *Reaves*.[178] We dismiss Mr. Laird's procedural due process claim against Superintendent Terra, Deputy Superintendents Wynder and Hensley, and the Review Committee Members for his placement in solitary confinement.

### D. Mr. Laird does not plead his modified movement restrictions prevent him from practicing his religion of choice.

Mr. Laird pleads modified movement restrictions consist of "constant escort" by prison officials.[179] Mr. Laird pleads this constant escort prevents him from "engaging in religous [sic] studies."[180] The Facility officials counter Mr. Laird does not plead he attempted to practice his religion and his modified movement restrictions prevented him from doing so.[181] The Facility

officials argue Mr. Laird does not plead how being escorted around SCI Phoenix prevents him from accessing religious activities.[182] We dismiss Mr. Laird's free exercise claim because he again does not plead facts allowing us to plausibly infer his escort around the SCI Phoenix grounds prevented him from practicing the religion of his choice.

Incarcerated persons have a First Amendment right to practice religion while incarcerated.[183] The incarcerated person must plead a prison regulation or action "impinges on" the incarcerated person's right to practice religion.[184] The regulation or action "is valid if it is reasonably related to legitimate penological interests."[185]

Mr. Laird does not plead facts explaining how being escorted around SCI Phoenix impinges on his practice of religion. Mr. Laird does not allege whether or how modified movement prevents him from practicing his religion or studying religious materials. We dismiss Mr. Laird's First Amendment free exercise claim against Superintendent Terra and the Review Committee Members without prejudice for failure to allege the ways in which the prison escort associated with his modified movement restrictions prevented him from practicing his religion of choice.

### E. Mr. Laird does not plead his modified movement restrictions denied him access to courts because he does not allege a lost chance to pursue a legal claim.

Mr. Laird pleads his modified movement restrictions deny him access to the law and leisure library.[186] The Facility officials counter Mr. Laird does not plead an access to courts claim because he does not allege a loss or rejection of a meritorious legal claim.[187] We dismiss Mr. Laird's access to courts claim because he again does not allege his denial of access to SCI Phoenix's law and leisure library caused him to lose or prevented him from bringing a meritorious legal claim.

Our Court of Appeals requires incarcerated persons alleging denial of access to the courts plead "(1) that they ... lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other

19

than in the present denial of access suit."[188] Mr. Laird does not plead his alleged denied access to the SCI Phoenix law and leisure library caused him to lose a meritorious claim or prevented him from bringing a meritorious claim.[189] We dismiss Mr. Laird's access to courts claim against Superintendent Terra and the Review Committee Members for failure to allege the ways in which the prison escort associated with his modified movement restrictions caused him to lose a meritorious legal claim or prevented him from bringing a meritorious legal claim.

### F.  Mr. Laird does not plead his modified movement restrictions constitute cruel and unusual punishment.

Mr. Laird concludes his modified movement restrictions violate the Eighth Amendment.[190] The Facility officials counter Mr. Laird's modified movement restrictions are not sufficiently serious to warrant a remedy under the Eighth Amendment. We dismiss Mr. Laird's Eighth Amendment claim because his pleaded modified movement restrictions and prison escort do not amount to a sufficiently serious deprivation necessary to allege a conditions of confinement claim.

The Eighth Amendment protects incarcerated persons from cruel and unusual punishment.[191] Incarcerated persons alleging Eighth Amendment claims challenging their conditions of confinement must satisfy objective and subjective test.[192] The incarcerated person must allege the deprivation associated with their conditions of confinement are objectively "sufficiently serious."[193] The incarcerated person must also allege the officials responsible for their conditions of confinement acted with deliberate indifference.[194] Our Court of Appeals does not consider placement in solitary confinement, on its own, a sufficiently serious deprivation violative of the Eighth Amendment.[195]

Mr. Laird does not plead facts demonstrating his modified movement restrictions are more restrictive, and therefore more "serious," than his solitary confinement conditions.[196] Mr. Laird pleads he is escorted around SCI Phoenix as a condition of modified movement.[197] Mr. Laird does

not otherwise plead facts about how modified movement affects his confinement.[198] We are left to guess how Mr. Laird is currently housed as a condition of modified movement.

We dismiss Mr. Laird's Eighth Amendment claim against Superintendent Terra and the Review Committee Members as he does not allege facts concerning his confinement while on modified movement restrictions.

### G.  Mr. Laird does not plead the alleged modified movement restrictions violate his procedural due process rights.[199]

Mr. Laird pleads the Facility officials' placement of him on modified movement restrictions violates his procedural due process rights.[200] The Facility officials counter Mr. Laird lacks a liberty interest in being free from escort around SCI Phoenix as required by his modified movement restrictions.[201] We dismiss Mr. Laird's procedural due process claim because his modified movement restrictions and escort around SCI Phoenix do not amount to a deprivation of a protected liberty interest.

An incarcerated person alleging a procedural due process claim must plead facility officials deprived them of a protected liberty or property interest and provided a "constitutionally deficient" procedure through which to challenge the deprivation.[202] An incarcerated person has a liberty interest where a prison official imposes "atypical and significant hardship on the [incarcerated person] in relation to the ordinary incidents of prison life."[203] Our Court of Appeals has held placement in solitary confinement, on its own, is not an atypical and significant hardship therefore implicating a protected liberty interest.[204]

Mr. Laird does not plead facts demonstrating his modified movement restrictions are more restrictive, and therefore represent an "atypical and significant hardship" warranting Fourteenth Amendment protection, than his solitary confinement conditions.[205] Mr. Laird pleads he is escorted around SCI Phoenix as a condition of modified movement.[206] Mr. Laird does not otherwise plead

facts about how modified movement affects his confinement.[207] Escort around SCI Phoenix could not be a more significant hardship than placement in solitary confinement.

We dismiss Mr. Laird's procedural due process claim against Superintendent Terra and the Review Committee Members without prejudice for failure to allege facts concerning his confinement while on modified movement restrictions.

## III.   Conclusion

We dismiss Mr. Laird's claims against Secretary Harry with prejudice. We dismiss Mr. Laird's First, Eighth, and Fourteenth Amendment claims against Deputy Superintendents Wynder and Hensley concerning Mr. Laird's placement on modified movement restrictions with prejudice.

We dismiss Mr. Laird's Eighth and Fourteenth Amendment claims against Superintendent Terra, Deputy Superintendents Wynder and Hensley, and the Review Committee Members concerning Mr. Laird's placement in solitary confinement without prejudice because Mr. Laird does not state a conditions of confinement claim or procedural due process claim but grant him leave to timely amend his complaint if he can plead deprivations in his condition other than his placement in solitary confinement.

We dismiss Mr. Laird's First, Eighth, and Fourteenth Amendment claims against Superintendent Terra and the Review Committee Members concerning his placement on modified movement restrictions without prejudice because Mr. Laird does not state a free exercise claim, access to courts claim, conditions of confinement claim or procedural due process claim but grant him leave to again timely amend if he can plead facts about the ways in which an escort around SCI Phoenix violated his free exercise, access to courts, conditions of confinement and procedural due process rights.

---

[1] ECF No. 25 ¶¶ 1–2.

[2] *Id.* ¶ 2.

[3] *Id.* ¶¶ 1, 5.

[4] *Id.* ¶ 13.

[5] *Id.* ¶ 10.

[6] *Id.*

[7] *Id.*

[8] Mr. Laird erroneously refers to Superintendent Joseph Terra as Deputy Superintendent. *See* ECF Nos. 2, 25.

[9] ECF No. 25 ¶ 3.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* ¶ 4.

[14] *Id.* ¶ 13.

[15] *Id.* ¶ 5.

[16] *Id.*

[17] *Id.* ¶ 10.

[18] *Id.* ¶¶ 11a–11d.

[19] *Id.* ¶ 11a.

[20] *Id.* ¶ 11c.

[21] *Id.* ¶ 11b.

[22] *Id.* ¶ 11d.

[23] *Id.* ¶ 16.

[24] *Id.* ¶ 14.

[25] *Id.* ¶ 17.

[26] *Id.* ¶ 18.

[27] *Id.* ¶ 19.

[28] *Id.*

[29] *Id.* ¶ 20.

[30] *Id.* ¶ 20a.

[31] *Id.* ¶ 20b.

[32] *Id.* ¶ 20c.

[33] *Id.* ¶ 21.

[34] *Id.*

[35] *Id.* ¶ 22.

[36] *Id.* ¶ 23.

[37] *Id.* ¶ 24.

[38] *Id.* ¶ 25.

[39] *Id.*

[40] *Id.* ¶ 27.

[41] *Id.* ¶ 28.

[42] *Id.* ¶ 29.

[43] *Id.* ¶ 30a.

[44] *Id.* ¶ 30b.

[45] *Id.* ¶ 33.

[46] *Id.* ¶ 32.

[47] *Id.* ¶ 34.

[48] *Id.* ¶ 35.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* ¶ 37.

[53] *Id.* ¶ 38.

[54] *Id.* ¶ 39.

[55] *Id.* ¶ 40.

[56] *Id.* ¶ 41.

[57] *Id.* ¶ 42.

[58] *See id.*

[59] *Id.* ¶ 43.

[60] *Id.* ¶ 44.

[61] *Id.* ¶ 45.

[62] *Id.*

[63] *Id.* ¶ 46.

[64] *Id.*

[65] *Id.* ¶¶ 47–50.

[66] *Id.* ¶ 47.

[67] *Id.* ¶ 49.

---

[68] *Id.* ¶ 50.

[69] *Id.*

[70] ECF No. 2.

[71] ECF No. 23. Mr. Laird alleged his placement in solitary confinement violated his Eighth and Fourteenth Amendment rights and lacked a "meaningful penalogical [sic] justification." ECF No. 2 at 3, 5. Mr. Laird alleged the Facility officials violated his right to be free from cruel and unusual punishment because he suffered "physical and psychological" injury from his 229-day stint in solitary confinement including "mental and/or emotional distress, eating disorder, sleeplessness, nightmares, anxiety, depression, stress, weight loss, muscle loss, [and] intestinal distress." *Id.* at 4–5. Mr. Laird refers to the "brutally harsh conditions of solitary confinement." *Id.* at 4.

Mr. Laird alleged his current placement on modified movement restrictions denied him access to the main yard, gym, and law and leisure library and violated his First, Eighth and Fourteenth Amendment rights. *Id.* at 6. Mr. Laird alleged modified movement restrictions constitute "constant escort by staff members." *Id.* Mr. Laird alleged the escort denies him the ability to engage in religious studies. *Id.* Mr. Laird sued the Facility officials in their individual and official capacities. *Id.* at 3.

We dismissed Mr. Laird's claims against the Facility officials in their official capacities with prejudice because Eleventh Amendment immunity protects state officials from being sued in their official capacities. ECF No. 23 at 4–5. We dismissed Mr. Laird's claims against the Facility officials in their individual capacities without prejudice because he failed to plead each official's personal involvement in his placement in solitary confinement and subsequent placement in modified movement restrictions. *Id.* at 5–8.

[72] ECF No. 25. Mr. Laird's amended Complaint does not include a request for relief and consistently refers to his previously dismissed first Complaint. *See id.* ¶ 50. Our Court of Appeals directs us to be "mindful of our obligation to liberally construe a pro se litigant's pleadings… particularly where the pro se litigant is imprisoned." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)). We will consider Mr. Laird's Complaint and amended Complaint mindful of Mr. Laird's incarceration.

[73] ECF No. 25 ¶¶ 4, 19, 25, 35.

[74] *Id.* ¶ 41.

[75] *Id.* ¶¶ 10, 35.

[76] *Id.* ¶¶ 21, 29, 35.

[77] ECF No. 26. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a

complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs*., 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 787 (3d Cir. 2016).

[78] ECF No. 26 at 5–8.

[79] *Id.* 8–10.

[80] *Id.* at 10–11.

[81] *Id.* at 12.

[82] *Id.* at 12–14.

[83] *Id.* at 14–15.

[84] *Id.* at 15.

[85] *Id.* at 16–17. We liberally incorporate Mr. Laird's request for relief in his first Complaint as part of our Court of Appeals's instruction we liberally construe pro se incarcerated person-filed Complaints.

[86] ECF No. 25 ¶¶ 4, 19, 25, 35.

[87] *Id.* ¶ 41.

[88] *Id.* ¶¶ 10, 35.

[89] *Id.* ¶¶ 21, 29, 35.

[90] *Id.* ¶ 41.

[91] ECF No. 26 at 8–10.

[92] *Payne v. Butts*, No. 22-2210, 2022 WL 16916347, at *1 (3d Cir. Nov. 14, 2022).

[93] *Id.* (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[94] *Wetzel*, 957 F.3d at 374 (quoting *Rode*, 845 F.2d at 1207).

[95] *Wayne v. Clark*, No. 21-4209, 2022 WL 17993131, *4 (E.D. Pa. Dec. 29, 2022) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186 (3d Cir. 1995)).

[96] *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006).

[97] ECF No. 25 ¶¶ 4, 19, 25, 35.

[98] *Id.* ¶ 41.

[99] *Martin v. Fayette Cnty. Prison*, No. 19-1233, 2020 WL 13845097 (W.D. Pa. Mar. 25, 2020), *report and recommendation adopted*, No. 2:19-1233, 2020 WL 13845096 (W.D. Pa. Apr. 20, 2020).

[100] *Id.* at *1.

[101] *Id.*

[102] *Id.* at *5.

[103] *Hall v. Zaken*, No. 20-1431, 2021 WL 3425730 (W.D. Pa. July 6, 2021), *report and recommendation adopted*, No. 2:20-01431, 2021 WL 3419676 (W.D. Pa. Aug. 5, 2021).

[104] *Id.* at *1.

---

[105] *Id.* at *1–3, 5.

[106] *Id.* at *5.

[107] *Reaves v. Rossman*, No. 21-1282, 2022 WL 18539772 (M.D. Pa. July 1, 2022), *report and recommendation adopted*, No. 21-1282, 2023 WL 1348508 (M.D. Pa. Jan. 31, 2023).

[108] *Id.* at *1.

[109] *Id.*

[110] *Id.*

[111] *Id.* at *3.

[112] *Id.* at *4.

[113] ECF No. 25 ¶¶ 4, 19, 25, 35.

[114] *Martin*, 2020 WL 13845097 at *1.

[115] *Hall*, 2021 WL 3425730 at *5.

[116] ECF No. 25 ¶ 41.

[117] *Id.* ¶¶ 42–44.

[118] *Id.* ¶¶ 47–50.

[119] *Reaves*, 2022 WL 18539772 at *4.

[120] ECF No. 25 ¶¶ 10, 35.

[121] *Id.* ¶¶ 21, 29, 35.

[122] *Id.* ¶ 41.

[123] *Wayne*, 2022 WL 17993131 (E.D. Pa. Dec. 29, 2022).

[124] *Id.* at *2.

[125] *Id.*

[126] *Id.*

[127] *Id.* at *1.

[128] *Id.* at *4.

[129] *Id.*

[130] ECF No. 25 ¶ 21.

[131] *Id.* ¶ 29.

[132] *Wayne*, 2022 WL 17993131 at *4.

[133] ECF No. 2 at 4–5.

[134] ECF No. 26 at 5–8.

[135] U.S. Const. Amend. VIII.

[136] *Allah v. Bartkowski*, 574 F. App'x 135, 138 (3d Cir. 2014).

[137] *Id.*

[138] *Clark v. Coupe*, 55 F.4th 167, 186 (3d Cir. 2022).

[139] *Wayne*, 2022 WL 17993131 at *5 (quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010)).

[140] *Reaves*, 2022 WL 18539772 at *5.

[141] *Wayne*, 2022 WL 17993131 at *5 (citing *Clark*, 55 4.th at 179).

[142] *See e.g.*, *Noble v. Wetzel*, No. 18-1160, 2020 WL 3211893 at *4 (W.D. Pa. May 11, 2020).

[143] *Id.*

[144] *Id.*

[145] *Id.*

[146] *Id.* at *5.

[147] *Green v. Coleman*, 575 F. App'x 44 (3d Cir. 2014).

[148] *Id.* at 47.

[149] *Id.*

[150] *Id.*

[151] *Reaves*, 2022 WL 18539772 (M.D. Pa. July 1, 2022).

[152] *Id.* at *1.

[153] *Id.* at *2.

[154] *Id.*

[155] *Id.* at *5.

[156] ECF No. 2 at 4–5.

[157] *Reaves*, 2022 WL 18539772 at *5.

[158] ECF No. 25 ¶ 1.

[159] Mr. Laird does not specify the type of due process claim he is bringing. *See* ECF No. 2. Mr. Laird's due process claims challenge the same conduct involved in his Eighth Amendment claim— his placement in solitary confinement. Our Court of Appeals instructs where an incarcerated person subjected to solitary confinement challenges their placement in solitary confinement by alleging an Eighth Amendment and a substantive due process claim we should dismiss the substantive due process claim under the "more-specific-provision" rule as the Eighth Amendment is the appropriate avenue to challenge conditions of confinement. *Johnson v. Pennsylvania Dep't of Corr.*, 846 F. App'x 123, 128 n.6 (3d Cir. 2021). We construe Mr. Laird's due process claim as a procedural due process claim.

[160] ECF No. 2 at 5.

[161] ECF No. 26 at 12.

[162] *Shoatz v. Wetzel*, No. 13-0657, 2014 WL 294988, at *5 (W.D. Pa. Jan. 27, 2014) (citing *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000)).

[163] *Allah*, 574 F. App'x at 139 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

[164] *Allah*, 574 F. App'x at 139.

[165] *Williams v. Armstrong*, 566 F. App'x 106, 108 (3d Cir. 2014).

[166] *Allah*, 574 F. App'x at 139.

[167] *Id.* at 137, 139.

[168] *Id.* at 137.

[169] *Id.* at 139.

[170] *Id.*

[171] *Reaves,* 2022 WL 18539772 (M.D. Pa. July 1, 2022).

[172] *Id.* at *6.

[173] *Id.*

[174] *Id.*

[175] ECF No. 2 at 4.

[176] *Allah*, 574 F. App'x at 139.

[177] ECF No. 2 at 4.

[178] *Reaves,* 2022 WL 18539772 at *6.

[179] ECF No. 2 at 6.

[180] *Id.*

[181] ECF No. 26 at 14–15.

[182] *Id.*

[183] *Bell v. Wolfish*, 441 U.S. 520 (1979).

[184] *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

[185] *Id.*

[186] ECF No. 2 at 6.

[187] ECF No. 26 at 15.

[188] *Rivera v. Monko*, 37 F.4th 909, 915 (3d Cir. 2022).

[189] *See* ECF Nos. 2, 25.

[190] ECF No. 2 at 6.

[191] U.S. CONST. AMEND. VIII.

[192] *Allah*, 574 F. App'x at 138.

[193] *Id.*

[194] *Clark*, 55 F.4th at 186.

[195] *See Williams*, 566 F. App'x at 109.

[196] *See* ECF No. 2.

[197] *Id.* at 6.

[198] *Id.*

[199] Like his due process claims concerning his placement in solitary confinement, Mr. Laird does not specify the type of due process claim he is bringing to challenge his modified movement restrictions. *See* ECF No. 2 at 6. Mr. Laird's due process claims challenge the same conduct, his placement on modified movement restrictions, as his Eighth Amendment claim. Our Court of Appeals instructs where an incarcerated person subjected to solitary confinement challenges their placement in solitary confinement by alleging an Eighth Amendment and a substantive due process claim we should dismiss the substantive due process claim under the "more-specific-provision" rule as the Eighth Amendment is the appropriate avenue to challenge conditions of confinement. *Johnson*, 846 F. App'x at 128 n.6. We construe Mr. Laird's due process claim as a procedural due process claim.

[200] ECF No. 2 at 6.

[201] ECF No. 26 at 10–11.

[202] *Shoatz*, 2014 WL 294988, at *5 (citing *Shoats*, 213 F.3d at 143).

[203] *Allah*, 574 F. App'x at 139 (quoting *Sandin*, 515 U.S. at 484).

[204] *Williams*, 566 F. App'x at 108.

[205] *See* ECF No. 2.

[206] *Id.* at 6.

[207] *Id.*