### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD LAIRD,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| **J. TERRA, WYNDER, HENSLEY,** | : | **No. 23-3429** |
| **ALL PROGRAM REVIEW COMMITTEE** | : | |
| **MEMBERS AT SCI-PHOENIX,** | : | |
| **Defendants,** | : | |

# AMENDED COMPLAINT

NOW COMES Richard Laird, *Pro Se* Plaintiff, per this Honorable Court's Order of January 31, 2024, Plaintiff offers this "*Amended Complaint*".

<u>1</u>).     Per this Honorable Court's Order of January 31, 2024, plaintiff has pled Defendants Superintendent Terra, Deputy Superintendent's Wynder and Hensley and the Program Review Committee members involvement in his placement in Solitary Confinement. Plaintiff has pled Defendant Terra's and Defendant Program Review Committee members involvement in his placement on "*MODIFIED MOVEMENT*" restrictions. Plaintiff will expound on each individual Defendant's involvement below.

At all times mentioned here in, each named Defendant: Superintendent Terra, Deputy Superintendents Wynder and Hensley, All Program Review Committee members acted **Under Color of State Law** and violated Plaintiff's Rights secured by the Constitution of the United States.

229 days in solitary confinement with no misconduct report having been issued.

1

137 of the first days of Solitary, Plaintiff was denied everything save for a set of his personal underwear. Plaintiff was denied access to his leagl file(s). Address/telephone book. Exposed to in-cell freezing cold temperatures. No blanket or pillow. A in-cell light on 24 hours a day. Strip searched multiple times each day. Placed in full restraints each time he exited his assigned cell. Exercised 1 hour a day, 5 days a week (weather permitting) in a cage so small, he could literally reach up with his hands and grab the top of the cage. Stretch out his arms side to side and almost touch each side of the cage. Fed a starvation diet. Plaintiff was 258 pounds when he was placed in Solitary. After 229 days in Solitary, he weighed 223 pounds. Plaintiff suffered muscle mass/weight loss.

In SCI-Phoenix (PHX) solitary, the in-cell window is frosted. Covered so one may not see out of it. No mirror in-cell. This is all to enhance sensory deprivation.

When permitted to shower, showering in solitary is offered 3 times per week, Plaintiff stood in what can only be described as sewer water. The showers were filthy, flooded, infested with tiny flying insects (fleas), filth of all kind was stuck to the shower stall walls, floors.

The noise levels in Solitary Confinement, at times, is enough to drive a human being insane. The screaming & howling by those nearby being tortured, beaten by guards, sprayed with OC spray, beaten by their cellmates (men in Solitary are now double celled - 2 men per cell; Plaintiff was not double celled), or simply driven insame by the structures of Solitary. Yelling, screaming out of the solid cell doors in an attempt to communicate with others and/or for help.

2

Seeking effective mental health help in solitary is all but impossible. During this 229 day period, your Plaintiff suffered severe depression, anxiety beyond description (shortness of breath to hyperventilation), stress, as well as suicidal thoughts on too many occasions to Count.

Plaintiff personally witnessed several men cry out for mental health help in Solitary. Those men were ignored until they began to bang on the solid cell door. Guards then came, in force, sprayed those men with OC spray, then placed those men in restraints and dragged them off to a POC cell (Psychiatric Observation Cell). Stripped naked and they stayed like that until they were "READY TO GO BACK TO THE HOLE". POC Cells are fully open to view. Doors etc. are all clear glass.

Plaintiff did not want to have to endure that process in order to seek out mental health assistance.

When "Psychology" did make their rounds in Solitary, Psychology would stop at the cell doors to conduct their interviews. Conversation to be heard by all in the Solitary Unit. The information from this interview to be used by all that overheard it. Guards, Prisoners, Inmate informants used to ridicule, taunt, inform etc...

Welcome to Solitary Confinement in the PA DOC, SCI-Phoenix.

2).      Plaintiff is not a attorney. Plaintiff admits that he is out of his depth in this litigation. Plaintiff has and is here-in again requesting assistance in litigating this §1983 by qualified legal representation. Defendants are represented by the PA Attorney General's Office. The PA Attorney General's Office is set to protect Pennsylvania and her citizens. This includes

3

Prisoners undergoing the abuse(s)  Plaintiff has been subjected to at the hands of the Defendants in this action. Plaintiff states that Defendants Terra, Wynder, Hensley, and all Program Review Committee members actions as described here-in violate both the Pennsylvania and United States Constitutional protections afforded to all citizens, including prisoners. Defendants Terra, Wynder, Hensley, and all Program Review Committee members actions as described here-in are criminal and violate the laws of the Pennsylvania and United States. See: ***PA Constitution, U.S. Constitution, and Official Oppression, 18 Pa.C.S.A. § 5301, as well as 18 U.S.C. § 3771(d)(3), Crime Victims Right Act***. Plaintiff here-in asks this Honorable Court the question of why the PA Attorney General's Office is representing all named Defendants in this §1983 action. ***Is the Representation by the PA AG's office appropriate for Defendants? Should the PA AG's office instead be representing Plaintiff in this § 1983 action?*** **If so, please correct this issue.**

    **3**). After spending 30+ years in Solitary Confinement, being released from Solitary, the Defendants Terra, Wynder, Hensley, and all Program Review Committee members ordered Plaintiff to again be held in Solitary Confinement. This time Plaintiff was to be held in Solitary Confinement forever. The hard fact remains as follows. Throughout this entire ordeal, Plaintiff was not issued a misconduct report. Defendants Terra, Wynder, Hensley, and all Program Review Committee members used hearsay as Justification to place your Plaintiff in Solitary Confinement forever.

    The 30+ years Plaintiff spent in Solitary was all due to Sentence, not misconduct reports. Not Behavior issues. That 30+ years of Solitary took a negative toll on your Plaintiff (physically and mentally). See: ***Reid v. Wetzel***, 18-CV-0176.

There is now evidence that proves that after spending time in Solitary Confinement, being released, then being placed back into Solitary with little to no information as to the "*why that person was returned to Solitary*" exacerbates the negative effects of Solitary Confinement. This is exactly what happened to your Plaintiff. On 8-8-22, Plaintiff was placed in Solitary Confinement and provided little to no information. Defendants Terra, Wynder, Hensley, and all Program Review Committee members did this with malicious forethought. With the intent to punish. With the intent to inflict harm. With the intent to torture Plaintiff.

    4).     **<u>DEFENDANT TERRA'S ACTIONS</u>**:

Defendant Terra is a seasoned corrections officer. Having worked with in the PA DOC for many years. As such Terra is well aware of the negative effects prolonged solitary confinement takes on a prisoner.

As described above in #1-3, the conditions of confinement Plaintiff was forced to endure were brutal. Defendant Terra ordered your Plaintiff to undergo these tortures conditions of confinement indefinitely, forever.

On August 8, 2022, Plaintiff was intentionally and with malicious forethought removed from the Capital Case Unit (CCU) and placed in Solitary Confinement when there was no meaningful penalogical justification/Security goal for the housing of Plaintiff in Solitary Confinement. Terra used Hearsay in an attempt to justify his actions in this matter.

Your Plaintiff states herein that there was a verifiable alternative form of housing available. Terra chose to ignore said alternative housing and instead subjected Plaintiff to the brutal tortures of Solitary Confinement for a prolonged period of time. Plaintiff was issued no

misconduct report. Plaintiff violated no rules and regulations of the facility. See: ___DC-ADM 802___ ___Sec. B.1.A. SECTION 1 - Placement in Administrative Custody. A.1.___" **The Staff must** **consider other alternatives Placements...".**

Plaintiff is a Capital Case prisoner. At all times mentioned here-in was housed at SCI-Phoenix. P-Block, the Capital Case Unit (CCU) which houses only Capital Case Prisoners. (Excluding the 229 days in Solitary Confinement).

Once it was established that Defendant Terra had been caught in the act of unnecessarily using Solitary Confinement, a Clear act of torture on your Plaintiff. Your Plaintiff was ordered to be released from Solitary Confinement and returned to said alternative housing. P-Block, the CCU at Phoenix. His general population housing block...

After 30+ years of solitary confinement at the hands of the PA DOC, said 30+ years of solitary a result of Plaintiff's sentence, not rule violations, misconduct etc... And the negative effects both mentally and physically resulting from 30+ years of solitary, then being released from solitary. Defendant Terra Ordered Plaintiff back to solitary where he was to remain indefinitely, forever. Plaintiff had received no misconduct report, violated no rules or regulations of the facility. Plaintiff was provided little to no information, save for a simple one sentenced 802 Report as to the why he was in solitary.

As described in #1-3 above, the conditionsof solitary confinement are brutally harsh, torture, and mentally crushing. The lack of in-cell stimuli. No window to look out of. No mirror to utilize in order to look after ones personal hygiene/health. 24 hour a day in-cell lighting. The noise from the others confined in solitary. The lack of information as to the who, what,

where, when, why. Being told by Terra that this would go on forever. That "*your never getting out of the hole*". Plaintiff took this literally to mean that he would suffer this mental and physical torture for the rest of his life.

Left alone with these thoughts, unable to sleep, the depression, the anxiety, stress, thoughts of ending his own life in order to make it all stop, to end the cycle of pain. Plaintiff knowing that if he cried out for help he would undergo assault at the hands of the RHU staff, be sprayed with OC spray and taken to a POC cell, Stripped naked, there to stand fully exposed freezing. Fed a food loaf until he was "READY TO GO BACK TO THE HOLE". This mental torture, the nightmares etc...are small part of what your Plaintiff suffered mentally at the hands of Defendant Terra's order of Solitary Confinement, "**Forever**".

Plaintiff respectfully states that 2 hours, 2 days, 2 months or 2 years of treatment as described here in is inhumane, barbaric, and torture.

Plaintiff respectfully asks this Honorable Court, *is any amount of torture acceptable*? Make no mistake. Solitary confinement as described here in, what it does to the human mind is nothing short of torture. See: *Johnson v. Wetzel*, 209 F. Supp 3d 766 (*September 20, 2016 at 2 - Deliberate Indifference*). "Academic Literature of both the psychological and penological genre reflect similar findings. Researchers have observed that "Psychological stressors such as isolation can be as clinically distressing as physical torture". Jeffery l. Metzner, M.D.et.al. Solitary Confinement and mental illness in us prisoners. A challenge for medical ethics, 38 J.AM. ACAD. PSYCHIATRY AND LAW 104, 104 (2010).

After 30+ years in solitary and then being released. Then being ordered back into

solitary forever, Plaintiff did believe he was going insane. Defendant Terra's actions as described throughout are malicious, sadistic in nature. Plaintiff has a B-Code housing status. Terra is well aware of Plaintiff's mental health history. (B-Code housing statute denotes treatment within the PA DOC for mental health issues). Defendant Terra is well aware of the effects of solitary confinement on prisoners with mental health issues. Especially capital case prisoners. See: ***Reid v. Wetzel***, *supra*. See also: ***PA Constitution 13th Article as well as the US Constitution 8th Amendment, Cruel and Unusual Punishment***.

Defendant Terra knew of and disregarded the fact that your Plaintiff was being subjected to an "EXCESSIVE RISK TO PLAINTIFF'S HEALTH OR SAFETY". See: ***Beers-Capitol v. Wetzel***, 256 F.3d 120 (3d Cir 2001). (*violating Plaintiff's 8th Amendment protections guranteed by the US Constitution*).

Defendant Terra knew of and disregarded a alternative housing thereby unnecessarily subjecting Plaintiff to the mental tortures of solitary confinement as described herein. Violating Plaintiff's Pennsylvania and US Constitutional protections. See: ***Pennsylvania and US Constitution, Cruel and Unusual punishment, Due Process, Liberty Interest, Equal Protection***. See also: ***Turner v. Safely***, 482 US 153, 107 S.Ct. 2254 and ***DeHart v. Horn***, 227 F.3d 47 (3d Cir. 2000). Plaintiff has a liberty interest in not being unnecessarily confined in solitary confinement, and to rather be confined in alternative housing on P-Block, the CCU. Had Plaintiff been housed on P-Block, the CCU, rather than solitary, he would have been entitled to much of the liberties the other similarly situated capital case prisoners on the CCU had been entitled to. Privileges such as: Proper food, meals, clothing, Television, and Radio in-cell, access to his legal files, address and telephone book, side yard (exercise equipment), no strip searching

or restraints when exiting cell, contact visiting, telephones, daily showers in shower stalls not flooded with sewer water, or filth and insects in the shower stalls. This condition of confinement as opposed to tortures of solitaries conditions of confinement. Defendant Terra's actions as described herein are a atypical and significant harship. See: ***Sandin v. Conner***, 515 US 472 (1995). See also: ***White v. Napoleon***, 897 F.3d 103, 111 (3d Cir. 1990). "Allegations of mental anxiety are sufficient to state a claim under the eighth amendment". Constitutional protections guranteed by the 8th and 14th amendments were violated by Defendant Terra's actions.

In addition to the mental health damage, Defendant Terra's actions took on Plaintiff the physical damage caused by Defendant Terra's actions is nothing short of horrendous. As described in #1-3 above, and herein, your Plaintiff suffered physical damage.

Plaintiff being forced to endure a starvation diet (RHU trays) for 229 days took a negative toll on Plaintiff's physical health. RHU trays are left to sit on the housing block by RHU staff working the RHU. Said trays sit until the food is cold. RHU trays contain barely enough food to fill a small child, much less a adult. The food is slopped on the RHU trays, undercooked and cold. As a result of eating RHU trays, your Plaintiff lost approximately 35 pounds in the 229 days Defendant Terra ordered him held in solitary. Said weight loss was mainly muscle mass.

Out of cell exercise consisted of first being subjected to a full strip search. Then being forced to bend at the waist and spreading the cheeks of your rear-end so that the RHU worker could look at your anus. Then you are placed in full restraints, with a tether attached (much like a dog leash). Then you are walked to a very small cage. Said cage being barely large enough for a grown man to walk 3 or 4 paces in any direction. Out of cell exercise is offered 5

days a week, Monday through Friday for 1 hour (weather permitting). Saturday and Sunday you are in cell 24 hours per day. No exercise equipment, as a result of this "EXERCISE" your Plaintiff lost a considerable amount of muscle mass. His knees, hips and back now continually ache.

The stress and anxiety of solitary confinement has Plaintiff's stomach a mess. Intestional distress during the 229 days of solitary was a daily problem. This intestional distress continues to this very day.

Showering in filth. Standing in sewer water while showering has taken a negative toll on your Plaintiff. This has damaged Plaintiff's feet. His toenails were infected. This continues to this day.

For 229 days in Solitary, Plaintiff went without a pillow or a blanket. Freezing temperatures in solitary. Normally your Plaintiff enjoys cooler temperatures. Solitary was freezing cold all day, all night. As a result your Plaintiff shivered through the 229 days and nights of solitary.

As a result of Defendant Terra's actions as described above, your Plaintiff suffers: Mental and Emotional distress, eating disorder, sleeplessness, nightmares, anxiety, depression, stress, suicidal thoughts, weight loss/muscle mass loss, intestional distress. The callousness of Defendant Terra's actions with respect to your Plaintiff's physical and Mental health violate your Plaintiff's US Constitutional protections afforded to all US citizens. Including prisoners sentenced to death. See: ***US Constitution 8th and 14th Amendments, Cruel and Unusual Punishment and Due Process***. See also: ***Thomas v. Tice***, 948 F.3d 133 (3d Cir. 2020).

See also: ***Williams***, 848 F.3d 569 (*stating that indefinitely subjecting individuals 'to isolating conditions that researchers agree causes harm... Is the essence of the atypical and significant hardship inquiry'*).

To date no misconduct report has been issued to your Plaintiff. Hearsay was used by Defendant Terra in attempt to justify the actions described herein. Defendant Terra has denied your Plaintiff meaningful review of the restrictive measures he was placed under. See: ***Sourbeer v. Robinson***, 791 F.2d 1094, 1105 (3d Cir. 1986).

## BY WAY OF RELIEF YOUR PLAINTIFF REQUESTS:

a. Proper training for all PA DOC employees to assure this does not occur to another human being, including capital case prisoners.

b. The assurance that this abusive/weaponized use of solitary confinement is done away with in the PA DOC.

c. $2,500,000.00 in Punitive damages.

d. $2,500,000.00 in Compensatory damages.

e. Pay any and all court costs/legal fees associated with this action, including attorney fees.

f. Assurance that the PA DOC will not act in a retaliatory fashion against Plaintiff.

A example must be made here, for if not your Plaintiff believes this tortures treatment will occur again in the future. If not to your Plaintiff, then perhaps to non-condemned prisoners. See: ***Allah v. Al-Hafeez***, 226 F.3d 247 (3d Cir. 2003).

11

<u>5</u>).    **DEFENDANT WYNDER'S ACTIONS**:

Defendant Wynder is a seasoned corrections officer. Having worked with in the PA DOC for many years. As such Wynder is well aware of the negative effects prolonged solitary confinement takes on a prisoner.

As described above in #1-3, the conditions of confinement Plaintiff was forced to endure were brutal. Defendant Wynder ordered your Plaintiff to undergo these tortures conditions of confinement indefinitely, forever.

On August 8, 2022, Plaintiff was intentionally and with malicious forethought removed from the Capital Case Unit (CCU) and placed in Solitary Confinement when there was no meaningful penalogical justification/Security goal for the housing of Plaintiff in Solitary Confinement. Wynder used Hearsay in an attempt to justify his actions in this matter.

Your Plaintiff states herein that there was a verifiable alternative form of housing available. Wynder chose to ignore said alternative housing and instead subjected Plaintiff to the brutal tortures of Solitary Confinement for a prolonged period of time. Plaintiff was issued no misconduct report. Plaintiff violated no rules and regulations of the facility. See: _**DC-ADM 802 Sec. B.1.A. SECTION 1 - Placement in Administrative Custody. A.1.**_" **The Staff must consider other alternatives Placements...**".

Plaintiff is a Capital Case prisoner. At all times mentioned here-in was housed at SCI-Phoenix. P-Block, the Capital Case Unit (CCU) which houses only Capital Case Prisoners.

(Excluding the 229 days in Solitary Confinement).

Once it was established that Defendant Wynder had been caught in the act of unnecessarily using Solitary Confinement, a Clear act of torture on your Plaintiff. Your Plaintiff was ordered to be released from Solitary Confinement and returned to said alternative housing. P-Block, the CCU at Phoenix. His general population housing block...

After 30+ years of solitary confinement at the hands of the PA DOC, said 30+ years of solitary a result of Plaintiff's sentence, not rule violations, misconduct etc... And the negative effects both mentally and physically resulting from 30+ years of solitary, then being released from solitary. Defendant Wynder Ordered Plaintiff back to solitary where he was to remain indefinitely, forever. Plaintiff had received no misconduct report, violated no rules or regulations of the facility. Plaintiff was provided little to no information, save for a simple one sentenced 802 Report as to the why he was in solitary.

As described in #1-3 above, the conditionsof solitary confinement are brutally harsh, torture, and mentally crushing. The lack of in-cell stimuli. No window to look out of. No mirror to utilize in order to look after ones personal hygiene/health. 24 hour a day in-cell lighting. The noise from the others confined in solitary. The lack of information as to the who, what, where, when, why. Being told by Wynder that this would go on forever. That "*your never getting out of the hole*". Plaintiff took this literally to mean that he would suffer this mental and physical torture for the rest of his life.

Left alone with these thoughts, unable to sleep, the depression, the anxiety, stress, thoughts of ending his own life in order to make it all stop, to end the cycle of pain.

13

Plaintiff knowing that if he cried out for help he would undergo assault at the hands of the RHU staff, be sprayed with OC spray and taken to a POC cell, Stripped naked, there to stand fully exposed freezing. Fed a food loaf until he was "READY TO GO BACK TO THE HOLE". This mental torture, the nightmares etc...are small part of what your Plaintiff suffered mentally at the hands of Defendant Wynder's order of Solitary Confinement, "**Forever**".

Plaintiff respectfully states that 2 hours, 2 days, 2 months or 2 years of treatment as described here in is inhumane, barbaric, and torture.

Plaintiff respectfully asks this Honorable Court, *is any amount of torture acceptable*? Make no mistake. Solitary confinement as described here in, what it does to the human mind is nothing short of torture. See: *Johnson v. Wetzel*, 209 F. Supp 3d 766 (*September 20, 2016 at 2 - Deliberate Indifference*). "Academic Literature of both the psychological and penological genre reflect similar findings. Researchers have observed that "Psychological stressors such as isolation can be as clinically distressing as physical torture". Jeffery l. Metzner, M.D.et.al. Solitary Confinement and mental illness in us prisoners. A challenge for medical ethics, 38 J.AM. ACAD. PSYCHIATRY AND LAW 104, 104 (2010).

After 30+ years in solitary and then being released. Then being ordered back into solitary forever, Plaintiff did believe he was going insane. Defendant Wynder's actions as described throughout are malicious, sadistic in nature. Plaintiff has a B-Code housing status. Wynder is well aware of Plaintiff's mental health history. (B-Code housing statute denotes treatment within the PA DOC for mental health issues). Defendant Wynder is well aware of the effects of solitary confinement on prisoners with mental health issues. Especially capital case

14

prisoners. See: _**Reid v. Wetzel**_, *supra*. See also: _**PA Constitution 13th Article as well as the US Constitution 8th Amendment, Cruel and Unusual Punishment**_.

Defendant Wynder knew of and disregarded the fact that your Plaintiff was being subjected to an "EXCESSIVE RISK TO PLAINTIFF'S HEALTH OR SAFETY". See: _**Beers-Capitol v. Wetzel**_, 256 F.3d 120 (3d Cir 2001). (*violating Plaintiff's 8th Amendment protections guranteed by the US Constitution*).

Defendant Wynder knew of and disregarded a alternative housing thereby unnecessarily subjecting Plaintiff to the mental tortures of solitary confinement as described herein. Violating Plaintiff's Pennsylvania and US Constitutional protections. See: _**Pennsylvania and US Constitution, Cruel and Unusual punishment, Due Process, Liberty Interest, Equal Protection**_. See also: _**Turner v. Safely**_, 482 US 153, 107 S.Ct. 2254 and _**DeHart v. Horn**_, 227 F.3d 47 (3d Cir. 2000). Plaintiff has a liberty interest in not being unnecessarily confined in solitary confinement, and to rather be confined in alternative housing on P-Block, the CCU. Had Plaintiff been housed on P-Block, the CCU, rather than solitary, he would have been entitled to much of the liberties the other similarly situated capital case prisoners on the CCU had been entitled to. Privileges such as: Proper food, meals, clothing, Television, and Radio in-cell, access to his legal files, address and telephone book, side yard (exercise equipment), no strip searching or restraints when exiting cell, contact visiting, telephones, daily showers in shower stalls not flooded with sewer water, or filth and insects in the shower stalls. This condition of confinement as opposed to tortures of solitaries conditions of confinement. Defendant Wynder's actions as described herein are a atypical and significant harship. See: _**Sandin v. Conner**_, 515 US 472 (1995). See also: _**White v. Napoleon**_, 897 F.3d 103, 111 (3d Cir. 1990). "Allegations of mental

anxiety are sufficient to state a claim under the eighth amendment". Constitutional protections guranteed by the 8th and 14th amendments were violated by Defendant Wynder's actions.

In addition to the mental health damage, Defendant Wynder's actions took on Plaintiff the physical damage caused by Defendant Wynder's actions is nothing short of horrendous. As described in #1-3 above, and herein, your Plaintiff suffered physical damage.

Plaintiff being forced to endure a starvation diet (RHU trays) for 229 days took a negative toll on Plaintiff's physical health. RHU trays are left to sit on the housing block by RHU staff working the RHU. Said trays sit until the food is cold. RHU trays contain barely enough food to fill a small child, much less a adult. The food is slopped on the RHU trays, undercooked and cold. As a result of eating RHU trays, your Plaintiff lost approximately 35 pounds in the 229 days Defendant Wynder ordered him held in solitary. Said weight loss was mainly muscle mass.

Out of cell exercise consisted of first being subjected to a full strip search. Then being forced to bend at the waist and spreading the cheeks of your rear-end so that the RHU worker could look at your anus. Then you are placed in full restraints, with a tether attached (much like a dog leash). Then you are walked to a very small cage. Said cage being barely large enough for a grown man to walk 3 or 4 paces in any direction. Out of cell exercise is offered 5 days a week, Monday through Friday for 1 hour (weather permitting). Saturday and Sunday you are in cell 24 hours per day. No exercise equipment, as a result of this "EXERCISE" your Plaintiff lost a considerable amount of muscle mass. His knees, hips and back now continually ache.

The stress and anxiety of solitary confinement has Plaintiff's stomach a mess.

Intestional distress during the 229 days of solitary was a daily problem. This intestional distress continues to this very day.

Showering in filth. Standing in sewer water while showering has taken a negative toll on your Plaintiff. This has damaged Plaintiff's feet. His toenails were infected. This continues to this day.

For 229 days in Solitary, Plaintiff went without a pillow or a blanket. Freezing temperatures in solitary. Normally your Plaintiff enjoys cooler temperatures. Solitary was freezing cold all day, all night. As a result your Plaintiff shivered through the 229 days and nights of solitary.

As a result of Defendant Wynder's actions as described above, your Plaintiff suffers: Mental and Emotional distress, eating disorder, sleeplessness, nightmares, anxiety, depression, stress, suicidal thoughts, weight loss/muscle mass loss, intestional distress. The callousness of Defendant Wynder's actions with respect to your Plaintiff's physical and Mental health violate your Plaintiff's US Constitutional protections afforded to all US citizens. Including prisoners sentenced to death. See: *US Constitution 8th and 14th Amendments, Cruel and Unusual Punishment and Due Process*. See also: *Thomas v. Tice*, 948 F.3d 133 (3d Cir. 2020). See also: *Williams,* 848 F.3d 569 (*stating that indefinitely subjecting individuals 'to isolating conditions that researchers agree causes harm... Is the essence of the atypical and significant hardship inquiry'*).

To date no misconduct report has been issued to your Plaintiff. Hearsay was used by Defendant Wynder in attempt to justify the actions described herein. Defendant Wynder has

denied your Plaintiff meaningful review of the restrictive measures he was placed under. See: ***Sourbeer v. Robinson***, 791 F.2d 1094, 1105 (3d Cir. 1986).

### BY WAY OF RELIEF YOUR PLAINTIFF REQUESTS:

a. Proper training for all PA DOC employees to assure this does not occur to another human being, including capital case prisoners.

b. The assurance that this abusive/weaponized use of solitary confinement is done away with in the PA DOC.

c. $2,500,000.00 in Punitive damages.

d. $2,500,000.00 in Compensatory damages.

e. Pay any and all court costs/legal fees associated with this action, including attorney fees.

f. Assurance that the PA DOC will not act in a retaliatory fashion against Plaintiff.

A example must be made here, for if not your Plaintiff believes this tortures treatment will occur again in the future. If not to your Plaintiff, then perhaps to non-condemned prisoners. See: ***Allah v. Al-Hafeez***, 226 F.3d 247 (3d Cir. 2003).


### 6).   DEFENDANT HENSLEY'S ACTIONS:

Defendant Hensley is a seasoned corrections officer. Having worked with in the PA DOC for many years. As such Hensley is well aware of the negative effects prolonged

solitary confinement takes on a prisoner.

As described above in #1-3, the conditions of confinement Plaintiff was forced to endure were brutal. Defendant Hensley ordered your Plaintiff to undergo these tortures conditions of confinement indefinitely, forever.

On August 8, 2022, Plaintiff was intentionally and with malicious forethought removed from the Capital Case Unit (CCU) and placed in Solitary Confinement when there was no meaningful penalogical justification/Security goal for the housing of Plaintiff in Solitary Confinement. Hensley used Hearsay in an attempt to justify his actions in this matter.

Your Plaintiff states herein that there was a verifiable alternative form of housing available. Hensley chose to ignore said alternative housing and instead subjected Plaintiff to the brutal tortures of Solitary Confinement for a prolonged period of time. Plaintiff was issued no misconduct report. Plaintiff violated no rules and regulations of the facility. See: ***DC-ADM 802 Sec. B.1.A. SECTION 1 - Placement in Administrative Custody. A.1.*** **" The Staff must consider other alternatives Placements...".**

Plaintiff is a Capital Case prisoner. At all times mentioned here-in was housed at SCI-Phoenix. P-Block, the Capital Case Unit (CCU) which houses only Capital Case Prisoners. (Excluding the 229 days in Solitary Confinement).

Once it was established that Defendant Hensley had been caught in the act of unnecessarily using Solitary Confinement, a Clear act of torture on your Plaintiff. Your Plaintiff was ordered to be released from Solitary Confinement and returned to said alternative housing.

19

P-Block, the CCU at Phoenix. His general population housing block...

After 30+ years of solitary confinement at the hands of the PA DOC, said 30+ years of solitary a result of Plaintiff's sentence, not rule violations, misconduct etc... And the negative effects both mentally and physically resulting from 30+ years of solitary, then being released from solitary. Defendant Hensley Ordered Plaintiff back to solitary where he was to remain indefinitely, forever. Plaintiff had received no misconduct report, violated no rules or regulations of the facility. Plaintiff was provided little to no information, save for a simple one sentenced 802 Report as to the why he was in solitary.

As described in #1-3 above, the conditions of solitary confinement are brutally harsh, torture, and mentally crushing. The lack of in-cell stimuli. No window to look out of. No mirror to utilize in order to look after ones personal hygiene/health. 24 hour a day in-cell lighting. The noise from the others confined in solitary. The lack of information as to the who, what, where, when, why. Being told by Hensley that this would go on forever. That "*your never getting out of the hole*". Plaintiff took this literally to mean that he would suffer this mental and physical torture for the rest of his life.

Left alone with these thoughts, unable to sleep, the depression, the anxiety, stress, thoughts of ending his own life in order to make it all stop, to end the cycle of pain. Plaintiff knowing that if he cried out for help he would undergo assault at the hands of the RHU staff, be sprayed with OC spray and taken to a POC cell, Stripped naked, there to stand fully exposed freezing. Fed a food loaf until he was "READY TO GO BACK TO THE HOLE". This mental torture, the nightmares etc...are small part of what your Plaintiff suffered mentally at the

20

hands of Defendant Hensley's order of Solitary Confinement, "**Forever**".

Plaintiff respectfully states that 2 hours, 2 days, 2 months or 2 years of treatment as described here in is inhumane, barbaric, and torture.

Plaintiff respectfully asks this Honorable Court, *is any amount of torture acceptable*? Make no mistake. Solitary confinement as described here in, what it does to the human mind is nothing short of torture. See: *Johnson v. Wetzel*, 209 F. Supp 3d 766 (*September 20, 2016 at 2 - Deliberate Indifference*). "Academic Literature of both the psychological and penological genre reflect similar findings. Researchers have observed that "Psychological stressors such as isolation can be as clinically distressing as physical torture". Jeffery l. Metzner, M.D.et.al. Solitary Confinement and mental illness in us prisoners. A challenge for medical ethics, 38 J.AM. ACAD. PSYCHIATRY AND LAW 104, 104 (2010).

After 30+ years in solitary and then being released. Then being ordered back into solitary forever, Plaintiff did believe he was going insane. Defendant Hensley's actions as described throughout are malicious, sadistic in nature. Plaintiff has a B-Code housing status. Hensley is well aware of Plaintiff's mental health history. (B-Code housing statute denotes treatment within the PA DOC for mental health issues). Defendant Hensley is well aware of the effects of solitary confinement on prisoners with mental health issues. Especially capital case prisoners. See: *Reid v. Wetzel*, *supra*. See also: *PA Constitution 13th Article as well as the US Constitution 8th Amendment, Cruel and Unusual Punishment*.

Defendant Hensley knew of and disregarded the fact that your Plaintiff was being subjected to an "EXCESSIVE RISK TO PLAINTIFF'S HEALTH OR SAFETY". See: *Beers-*

*Capitol v. Wetzel*, 256 F.3d 120 (3d Cir 2001). (*violating Plaintiff's 8th Amendment protections guranteed by the US Constitution*).

        Defendant Hensley knew of and disregarded a alternative housing thereby unnecessarily subjecting Plaintiff to the mental tortures of solitary confinement as described herein. Violating Plaintiff's Pennsylvania and US Constitutional protections. See: *Pennsylvania and US Constitution, Cruel and Unusual punishment, Due Process, Liberty Interest, Equal Protection*. See also: *Turner v. Safely*, 482 US 153, 107 S.Ct. 2254 and *DeHart v. Horn*, 227 F.3d 47 (3d Cir. 2000). Plaintiff has a liberty interest in not being unnecessarily confined in solitary confinement, and to rather be confined in alternative housing on P-Block, the CCU. Had Plaintiff been housed on P-Block, the CCU, rather than solitary, he would have been entitled to much of the liberties the other similarly situated capital case prisoners on the CCU had been entitled to. Privileges such as: Proper food, meals, clothing, Television, and Radio in-cell, access to his legal files, address and telephone book, side yard (exercise equipment), no strip searching or restraints when exiting cell, contact visiting, telephones, daily showers in shower stalls not flooded with sewer water, or filth and insects in the shower stalls. This condition of confinement as opposed to tortures of solitaries conditions of confinement. Defendant Hensley's actions as described herein are a atypical and significant harship. See: *Sandin v. Conner*, 515 US 472 (1995). See also: *White v. Napoleon*, 897 F.3d 103, 111 (3d Cir. 1990). "Allegations of mental anxiety are sufficient to state a claim under the eighth amendment". Constitutional protections guranteed by the 8th and 14th amendments were violated by Defendant Hensley's actions.

        In addition to the mental health damage, Defendant Hensley's actions took on Plaintiff the physical damage caused by Defendant Hensley's actions is nothing short of

horrendous. As described in #1-3 above, and herein, your Plaintiff suffered physical damage.

Plaintiff being forced to endure a starvation diet (RHU trays) for 229 days took a negative toll on Plaintiff's physical health. RHU trays are left to sit on the housing block by RHU staff working the RHU. Said trays sit until the food is cold. RHU trays contain barely enough food to fill a small child, much less a adult. The food is slopped on the RHU trays, undercooked and cold. As a result of eating RHU trays, your Plaintiff lost approximately 35 pounds in the 229 days Defendant Hensley ordered him held in solitary. Said weight loss was mainly muscle mass.

Out of cell exercise consisted of first being subjected to a full strip search. Then being forced to bend at the waist and spreading the cheeks of your rear-end so that the RHU worker could look at your anus. Then you are placed in full restraints, with a tether attached (much like a dog leash). Then you are walked to a very small cage. Said cage being barely large enough for a grown man to walk 3 or 4 paces in any direction. Out of cell exercise is offered 5 days a week, Monday through Friday for 1 hour (weather permitting). Saturday and Sunday you are in cell 24 hours per day. No exercise equipment, as a result of this "EXERCISE" your Plaintiff lost a considerable amount of muscle mass. His knees, hips and back now continually ache.

The stress and anxiety of solitary confinement has Plaintiff's stomach a mess. Intestional distress during the 229 days of solitary was a daily problem. This intestional distress continues to this very day.

Showering in filth. Standing in sewer water while showering has taken a negative toll on your Plaintiff. This has damaged Plaintiff's feet. His toenails were infected. This continues

to this day.

For 229 days in Solitary, Plaintiff went without a pillow or a blanket. Freezing temperatures in solitary. Normally your Plaintiff enjoys cooler temperatures. Solitary was freezing cold all day, all night. As a result your Plaintiff shivered through the 229 days and nights of solitary.

As a result of Defendant Hensley's actions as described above, your Plaintiff suffers: Mental and Emotional distress, eating disorder, sleeplessness, nightmares, anxiety, depression, stress, suicidal thoughts, weight loss/muscle mass loss, intestional distress. The callousness of Defendant Hensley's actions with respect to your Plaintiff's physical and Mental health violate your Plaintiff's US Constitutional protections afforded to all US citizens. Including prisoners sentenced to death. See: ***US Constitution 8th and 14th Amendments, Cruel and Unusual Punishment and Due Process***. See also: ***Thomas v. Tice***, 948 F.3d 133 (3d Cir. 2020). See also: ***Williams,*** 848 F.3d 569 (*stating that indefinitely subjecting individuals '**to isolating conditions that researchers agree causes harm... Is the essence of the atypical and significant hardship inquiry**'*).

To date no misconduct report has been issued to your Plaintiff. Hearsay was used by Defendant Hensley in attempt to justify the actions described herein. Defendant Hensley has denied your Plaintiff meaningful review of the restrictive measures he was placed under. See: ***Sourbeer v. Robinson***, 791 F.2d 1094, 1105 (3d Cir. 1986).

### BY WAY OF RELIEF YOUR PLAINTIFF REQUESTS:

a. Proper training for all PA DOC employees to assure this does not occur to another human

being, including capital case prisoners.

**b.** The assurance that this abusive/weaponized use of solitary confinement is done away with in the PA DOC.

**c.** $2,500,000.00 in Punitive damages.

**d.** $2,500,000.00 in Compensatory damages.

**e.** Pay any and all court costs/legal fees associated with this action, including attorney fees.

**f.** Assurance that the PA DOC will not act in a retaliatory fashion against Plaintiff.

A example must be made here, for if not your Plaintiff believes this tortures treatment will occur again in the future. If not to your Plaintiff, then perhaps to non-condemned prisoners. See: *Allah v. Al-Hafeez*, 226 F.3d 247 (3d Cir. 2003).

7). **DEFENDANT ALL PROGRAM REVIEW COMMITTEE MEMBERS ACTIONS:**

Defendant all Program Review Committee members are a seasoned corrections officer. Having worked with in the PA DOC for many years. As such all Program Review Committee members is well aware of the negative effects prolonged solitary confinement takes on a prisoner.

As described above in #1-3, the conditions of confinement Plaintiff was forced to endure were brutal. Defendant all Program Review Committee members ordered your Plaintiff to

undergo these tortures conditions of confinement indefinitely, forever.

On August 8, 2022, Plaintiff was intentionally and with malicious forethought removed from the Capital Case Unit (CCU) and placed in Solitary Confinement when there was no meaningful penalogical justification/Security goal for the housing of Plaintiff in Solitary Confinement. All Program Review Committee members used Hearsay in an attempt to justify his actions in this matter.

Your Plaintiff states herein that there was a verifiable alternative form of housing available. All Program Review Committee members chose to ignore said alternative housing and instead subjected Plaintiff to the brutal tortures of Solitary Confinement for a prolonged period of time. Plaintiff was issued no misconduct report. Plaintiff violated no rules and regulations of the facility. See: ***DC-ADM 802 Sec. B.1.A. SECTION 1 - Placement in Administrative Custody.*** ***A.1.***" **The Staff must consider other alternatives Placements...**".

Plaintiff is a Capital Case prisoner. At all times mentioned here-in was housed at SCI-Phoenix. P-Block, the Capital Case Unit (CCU) which houses only Capital Case Prisoners. (Excluding the 229 days in Solitary Confinement).

Once it was established that Defendant All Program Review Committee members had been caught in the act of unnecessarily using Solitary Confinement, a Clear act of torture on your Plaintiff. Your Plaintiff was ordered to be released from Solitary Confinement and returned to said alternative housing. P-Block, the CCU at Phoenix. His general population housing block...

After 30+ years of solitary confinement at the hands of the PA DOC, said 30+

26

years of solitary a result of Plaintiff's sentence, not rule violations, misconduct etc... And the negative effects both mentally and physically resulting from 30+ years of solitary, then being released from solitary. Defendant All Program Review Committee members Ordered Plaintiff back to solitary where he was to remain indefinitely, forever. Plaintiff had received no misconduct report, violated no rules or regulations of the facility. Plaintiff was provided little to no information, save for a simple one sentenced 802 Report as to the why he was in solitary.

As described in #1-3 above, the conditions of solitary confinement are brutally harsh, torture, and mentally crushing. The lack of in-cell stimuli. No window to look out of. No mirror to utilize in order to look after ones personal hygiene/health. 24 hour a day in-cell lighting. The noise from the others confined in solitary. The lack of information as to the who, what, where, when, why. Being told by All Program Review Committee members that this would go on forever. That "*your never getting out of the hole*". Plaintiff took this literally to mean that he would suffer this mental and physical torture for the rest of his life.

Left alone with these thoughts, unable to sleep, the depression, the anxiety, stress, thoughts of ending his own life in order to make it all stop, to end the cycle of pain. Plaintiff knowing that if he cried out for help he would undergo assault at the hands of the RHU staff, be sprayed with OC spray and taken to a POC cell, Stripped naked, there to stand fully exposed freezing. Fed a food loaf until he was "READY TO GO BACK TO THE HOLE". This mental torture, the nightmares etc...are small part of what your Plaintiff suffered mentally at the hands of Defendant All Program Review Committee members order of Solitary Confinement, "**Forever**".

Plaintiff respectfully states that 2 hours, 2 days, 2 months or 2 years of treatment as described here in is inhumane, barbaric, and torture.

Plaintiff respectfully asks this Honorable Court, **is any amount of torture acceptable**? Make no mistake. Solitary confinement as described here in, what it does to the human mind is nothing short of torture. See: ***Johnson v. Wetzel***, 209 F. Supp 3d 766 (***September 20, 2016 at 2 - Deliberate Indifference***). "Academic Literature of both the psychological and penological genre reflect similar findings. Researchers have observed that "Psychological stressors such as isolation can be as clinically distressing as physical torture". Jeffery l. Metzner, M.D.et.al. Solitary Confinement and mental illness in us prisoners. A challenge for medical ethics, 38 J.AM. ACAD. PSYCHIATRY AND LAW 104, 104 (2010).

After 30+ years in solitary and then being released. Then being ordered back into solitary forever, Plaintiff did believe he was going insane. Defendant All Program Review Committee members actions as described throughout are malicious, sadistic in nature. Plaintiff has a B-Code housing status. All Program Review Committee members is well aware of Plaintiff's mental health history. (B-Code housing statute denotes treatment within the PA DOC for mental health issues). Defendant All Program Review Committee members is well aware of the effects of solitary confinement on prisoners with mental health issues. Especially capital case prisoners. See: ***Reid v. Wetzel***, **supra**. See also: ***PA Constitution 13th Article as well as the US Constitution 8th Amendment, Cruel and Unusual Punishment***.

Defendant All Program Review Committee members knew of and disregarded the fact that your Plaintiff was being subjected to an "EXCESSIVE RISK TO PLAINTIFF'S

HEALTH OR SAFETY". See: ***Beers-Capitol v. Wetzel***, 256 F.3d 120 (3d Cir 2001). (*violating Plaintiff's 8th Amendment protections guranteed by the US Constitution*).

Defendant All Program Review Committee members knew of and disregarded a alternative housing thereby unnecessarily subjecting Plaintiff to the mental tortures of solitary confinement as described herein. Violating Plaintiff's Pennsylvania and US Constitutional protections. See: ***Pennsylvania and US Constitution, Cruel and Unusual punishment, Due Process, Liberty Interest, Equal Protection***. See also: ***Turner v. Safely***, 482 US 153, 107 S.Ct. 2254 and ***DeHart v. Horn***, 227 F.3d 47 (3d Cir. 2000). Plaintiff has a liberty interest in not being unnecessarily confined in solitary confinement, and to rather be confined in alternative housing on P-Block, the CCU. Had Plaintiff been housed on P-Block, the CCU, rather than solitary, he would have been entitled to much of the liberties the other similarly situated capital case prisoners on the CCU had been entitled to. Privileges such as: Proper food, meals, clothing, Television, and Radio in-cell, access to his legal files, address and telephone book, side yard (exercise equipment), no strip searching or restraints when exiting cell, contact visiting, telephones, daily showers in shower stalls not flooded with sewer water, or filth and insects in the shower stalls. This condition of confinement as opposed to tortures of solitaries conditions of confinement. Defendant All Program Review Committee members actions as described herein are a atypical and significant harship. See: ***Sandin v. Conner***, 515 US 472 (1995). See also: ***White v. Napoleon***, 897 F.3d 103, 111 (3d Cir. 1990). "Allegations of mental anxiety are sufficient to state a claim under the eighth amendment". Constitutional protections guranteed by the 8th and 14th amendments were violated by Defendant All Program Review Committee members actions.

In addition to the mental health damage, Defendant All Program Review Committee members actions took on Plaintiff the physical damage caused by Defendant All Program Review Committee members actions is nothing short of horrendous. As described in # 1-3 above, and herein, your Plaintiff suffered physical damage.

Plaintiff being forced to endure a starvation diet (RHU trays) for 229 days took a negative toll on Plaintiff's physical health. RHU trays are left to sit on the housing block by RHU staff working the RHU. Said trays sit until the food is cold. RHU trays contain barely enough food to fill a small child, much less a adult. The food is slopped on the RHU trays, undercooked and cold. As a result of eating RHU trays, your Plaintiff lost approximately 35 pounds in the 229 days Defendant All Program Review Committee members ordered him held in solitary. Said weight loss was mainly muscle mass.

Out of cell exercise consisted of first being subjected to a full strip search. Then being forced to bend at the waist and spreading the cheeks of your rear-end so that the RHU worker could look at your anus. Then you are placed in full restraints, with a tether attached (much like a dog leash). Then you are walked to a very small cage. Said cage being barely large enough for a grown man to walk 3 or 4 paces in any direction. Out of cell exercise is offered 5 days a week, Monday through Friday for 1 hour (weather permitting). Saturday and Sunday you are in cell 24 hours per day. No exercise equipment, as a result of this "EXERCISE" your Plaintiff lost a considerable amount of muscle mass. His knees, hips and back now continually ache.

The stress and anxiety of solitary confinement has Plaintiff's stomach a mess.

Intestional distress during the 229 days of solitary was a daily problem. This intestional distress continues to this very day.

Showering in filth. Standing in sewer water while showering has taken a negative toll on your Plaintiff. This has damaged Plaintiff's feet. His toenails were infected. This continues to this day.

For 229 days in Solitary, Plaintiff went without a pillow or a blanket. Freezing temperatures in solitary. Normally your Plaintiff enjoys cooler temperatures. Solitary was freezing cold all day, all night. As a result your Plaintiff shivered through the 229 days and nights of solitary.

As a result of Defendant All Program Review Committee members actions as described above, your Plaintiff suffers: Mental and Emotional distress, eating disorder, sleeplessness, nightmares, anxiety, depression, stress, suicidal thoughts, weight loss/muscle mass loss, intestional distress. The callousness of Defendant All Program Review Committee members actions with respect to your Plaintiff's physical and Mental health violate your Plaintiff's US Constitutional protections afforded to all US citizens. Including prisoners sentenced to death. See: *US Constitution 8th and 14th Amendments, Cruel and Unusual Punishment and Due Process*. See also: *Thomas v. Tice*, 948 F.3d 133 (3d Cir. 2020). See also: *Williams,* 848 F.3d 569 (*stating that indefinitely subjecting individuals 'to isolating conditions that researchers agree causes harm... Is the essence of the atypical and significant hardship inquiry'*).

To date no misconduct report has been issued to your Plaintiff. Hearsay was used by Defendant All Program Review Committee members in attempt to justify the actions

31

described herein. Defendant All Program Review Committee members has denied your Plaintiff meaningful review of the restrictive measures he was placed under. See: ***Sourbeer v. Robinson***, 791 F.2d 1094, 1105 (3d Cir. 1986).

## BY WAY OF RELIEF YOUR PLAINTIFF REQUESTS:

a. Proper training for all PA DOC employees to assure this does not occur to another human being, including capital case prisoners.

b. The assurance that this abusive/weaponized use of solitary confinement is done away with in the PA DOC.

c. $2,500,000.00 in Punitive damages.

d. $2,500,000.00 in Compensatory damages.

e. Pay any and all court costs/legal fees associated with this action, including attorney fees.

f. Assurance that the PA DOC will not act in a retaliatory fashion against Plaintiff.

A example must be made here, for if not your Plaintiff believes this tortures treatment will occur again in the future. If not to your Plaintiff, then perhaps to non-condemned prisoners. See: ***Allah v. Al-Hafeez***, 226 F.3d 247 (3d Cir. 2003).

## 8). DEFENDANT TERRA'S ACTIONS: "MODIFIED MOVEMENT"

Once your Plaintiff was ordered released from solitary confinement. (Plaintiff

points out the hard fact, had Defendant Terra not been ordered to release Plaintiff from Solitary Confinement, Plaintiff would to this date be housed in solitary confinement. Undergoing the tortures of solitary as described herein). Defendant Terra ordered Plaintiff placed under "Modified Movement" restrictions.

Said "Modified Movement" restrictions placed a undue hardship on your Plaintiff. Defendant Terra claims that "Modified Movement" is simply a escort in and around the prison. That statement is false. A out-right lie.

Plaintiff states here-in that Defendant Terra fully restricts Plaintiff from using the facilities main law library, leisure library, main yard, Gym. Plaintiff's access to legal research was greatly rstricted. Plaintiff was down to using out dated prisoner self help litigation manuals in order to litigate this §1983. Access to obtaining photocopies for the purpose of filing legal documents was greatly hampered. All other similarly situated Capital Case prisoners on the CCU at Phoenix had access to the facilities main law library, leisure library, main yard, Gym. The "MODIFIED MOVEMENT" restrictions placed on Plaintiff by Defendant Terra violates Plaintiff's state and federal constitutional protections. See: ***Pennsylvania and US Constitution, Cruel and Unusual punishment, Due Process, Liberty Interest, Equal Protection***. See also: ***Turner v. Safely***, 482 US 153, 107 S.Ct. 2254 and ***DeHart v. Horn***, 227 F.3d 47 (3d Cir. 2000).

Effective access to the Courts was put at risk by Defendant Terra's actions. Your Plaintiff states that the filing of basic legal documents may have ben possible. However, without access to the facilities main law library, research for effective litigation was all but impossible. Not just in this civil litigation. Plaintiff is a Capital Case Prisoner, under a sentence of death.

This capital Case Conviction and sentence is not a matter of "whits and skills". This Capital Case conviction and sentence are literally a matter of life and death. Defendant Terra's actions in this matter prevented Plaintiff from effectively aiding in his own defense. Defendant Terra's actions as described throughout are not occurring to any other group of prisoners with in the PA DOC. The actions described herein are being carried out by Defendant Terra only against Capital Case Prisoners at SCI-Phoenix. This is discrimination. Discrimination not only violates State and Federal Constitutional protections. Discrimination is also a illegal act. Defendant Terra is breaking the laws of Pennsylvania and the United States. See: ***Official Oppression, 18 Pa. C.S.A § 5301***. See also: ***18 U.S.C. § 3771(d)(3), Crime Victims Rights Act***.

The "Modified Movement" restrictions ordered by Defendant Terra denied Plaintiff the ability to fully participate in his religion of choice. Each time Plaintiff attempted to go to Catholic Mass at SCI-Phoenix, he was verbally harassed by staff members.

Mass was interrupted on several occasions by staff members, pulling Plaintiff out of Mass for Plaintiff attempting to participate in Holy Mass.

Plaintiff was discouraged from attending Mass, by staff at SCI-Phoenix.

Plaintiff attempted to rectify this matter with staff at SCI-Phoenix, all to no avail. Finally Plaintiff was left with no choice but to file Official Inmate Grievance(s) over staff interfering with Catholic Mass, harrassment, retaliation over the filing of this § 1983. Again, all to no avail. (*Administrative remedies are now exhausted in said Grievance*).

Plaintiff was denied the opportunity to attend a Certified Catholic Studies Group. Defendant Terra by Ordering "Modified Movement" restrictions not only prevented Plaintiff

34

from freely practicing his religion of choice. Plaintiff was also denied the opportunity to participate in any ACTIVITY department offerings.To wit: Religious studies, Bible study, School, Sporting Activities, Soda and Ice Cream sales, etc... All ACTIVITY department programs offered to every other similarly situated CCU prisover. Terra's actions violate your Plaintiff's Constitutional protections afforded to all U.S. Citizens, including condemned prisoners. See: ***U.S. Constitution, 1st, 8th, and 14th Amendments***, which assure that all U.S. Citizens, including your Plaintiff the right to Religious freedom, Protection from Cruel and Unusual punishment, Equal Protection and Liberty Interest, Due Process Protections. See also ***Carey v. Piphus***, 435 U.S. 246.

Defendant Terra's intentional, malicious act has caused your Plaintiff to suffer additional stress, anxiety, depression. Furthermore, Defendant Terra's actions placed your Plaintiff's very safety in jeopardy.

Other General Population inmates at SCI-Phoenix saw Plaintiff under constant escort by staff members. Every off the block movement that your Plaintiff made, Plaintiff was escorted by Correction Officers. This created a negative image. One where other General Population prisoners viewed Plaintiff in need of constant protection.

Defendant Terra intentionally created this "Modified Movement" restriction in order to draw negative attention to Plaintif, placing Plaintiff in jeopardy, creating a hostile environment. See: ***Thomas v. Tice***, 948 F.3d 133 (3d Cir. 2020).

Throughout this entire "Modified Movment" ordeal, no meaningful review of this situation took place. See: ***Sourbeer v. Robinson***, *Supra*.

<u>**BY WAY OF RELIEF YOUR PLAINTIFF REQUESTS**</u>:

a.  Proper training for all PA DOC employees to assure this does not occur to another human being, including capital case prisoners.

b.  This abusive/weaponized use of "*Modified Movement*" against CCU prisoners at SCI-Phoenix (as well as anywhere else) is to be done away with. Is to be no longer used by the PA DOC.

c.  $2,500,000.00 in Punitive damages.

d.  $2,500,000.00 in Compensatory damages.

e.  Pay any and all court costs/legal fees associated with this § 1983 action, including attorney fees.

f.  Assurance that the PA DOC will not act in a retaliatory fashion against Plaintiff.


<u>**9**</u>).    <u>**DEFENDANT ALL PROGRAM REVIEW COMMITTEE MEMBERS ACTIONS: "MODIFIED MOVEMENT"**</u>

Once your Plaintiff was ordered released from solitary confinement. (Plaintiff points out the hard fact, had Defendant All Program Review Committee members not been ordered to release Plaintiff from Solitary Confinement, Plaintiff would to this date be housed in solitary confinement. Undergoing the tortures of solitary as described herein). Defendant All Program Review Committee members ordered Plaintiff placed under "Modified Movement" restrictions.

Said "Modified Movement" restrictions placed a undue hardship on your Plaintiff. Defendant All Program Review Committee members claims that "Modified Movement" is simply a escort in and around the prison. That statement is false. A out-right lie.

Plaintiff states here-in that Defendant All Program Review Committee members fully restricts Plaintiff from using the facilities main law library, leisure library, main yard, Gym. Plaintiff's access to legal research was greatly rstricted. Plaintiff was down to using out dated prisoner self help litigation manuals in order to litigate this §1983. Access to obtaining photocopies for the purpose of filing legal documents was greatly hampered. All other similarly situated Capital Case prisoners on the CCU at Phoenix had access to the facilities main law library, leisure library, main yard, Gym. The "MODIFIED MOVEMENT" restrictions placed on Plaintiff by Defendant All Program Review Committee members violates Plaintiff's state and federal constitutional protections. See: ***Pennsylvania and US Constitution, Cruel and Unusual punishment, Due Process, Liberty Interest, Equal Protection***. See also: ***Turner v. Safely***, 482 US 153, 107 S.Ct. 2254 and ***DeHart v. Horn***, 227 F.3d 47 (3d Cir. 2000).

Effective access to the Courts was put at risk by Defendant All Program Review Committee members actions. Your Plaintiff states that the filing of basic legal documents may have ben possible. However, without access to the facilities main law library, research for effective litigation was all but impossible. Not just in this civil litigation. Plaintiff is a Capital Case Prisoner, under a sentence of death. This capital Case Conviction and sentence is not a matter of "whits and skills". This Capital Case conviction and sentence are literally a matter of life and death. Defendant All Program Review Committee members actions in this matter prevented Plaintiff from effectively aiding in his own defense. Defendant All Program Review

37

Committee members actions as described throughout are not occurring to any other group of prisoners with in the PA DOC. The actions described herein are being carried out by Defendant All Program Review Committee members only against Capital Case Prisoners at SCI-Phoenix. This is discrimination. Discrimination not only violates State and Federal Constitutional protections. Discrimination is also a illegal act. Defendant All Program Review Committee members is breaking the laws of Pennsylvania and the United States. See: ***Official Oppression, 18 Pa. C.S.A § 5301***. See also: ***18 U.S.C. § 3771(d)(3), Crime Victims Rights Act***.

The "Modified Movement" restrictions ordered by Defendant All Program Review Committee members denied Plaintiff the ability to fully participate in his religion of choice. Each time Plaintiff attempted to go to Catholic Mass at SCI-Phoenix, he was verbally harassed by staff members.

Mass was interrupted on several occasions by staff members, pulling Plaintiff out of Mass for Plaintiff attempting to participate in Holy Mass.

Plaintiff was discouraged from attending Mass, by staff at SCI-Phoenix.

Plaintiff attempted to rectify this matter with staff at SCI-Phoenix, all to no avail. Finally Plaintiff was left with no choice but to file Official Inmate Grievance(s) over staff interfering with Catholic Mass, harrassment, retaliation over the filing of this § 1983. Again, all to no avail. (*Administrative remedies are now exhausted in said Grievance*).

Plaintiff was denied the opportunity to attend a Certified Catholic Studies Group. Defendant All Program Review Committee members by Ordering "Modified Movement" restrictions not only prevented Plaintiff from freely practicing his religion of choice. Plaintiff was

also denied the opportunity to participate in any ACTIVITY department offerings.To wit: Religious studies, Bible study, School, Sporting Activities, Soda and Ice Cream sales, etc... All ACTIVITY department programs offered to every other similarly situated CCU prisover. All Program Review Committee members actions violate your Plaintiff's Constitutional protections afforded to all U.S. Citizens, including condemned prisoners. See: ***U.S. Constitution, 1st, 8th, and 14th Amendments***, which assure that all U.S. Citizens, including your Plaintiff the right to Religious freedom, Protection from Cruel and Unusual punishment, Equal Protection and Liberty Interest, Due Process Protections. See also ***Carey v. Piphus***, 435 U.S. 246.

Defendant All Program Review Committee members intentional, malicious act has caused your Plaintiff to suffer additional stress, anxiety, depression. Furthermore, Defendant All Program Review Committee members actions placed your Plaintiff's very safety in jeopardy.

Other General Population inmates at SCI-Phoenix saw Plaintiff under constant escort by staff members. Every off the block movement that your Plaintiff made, Plaintiff was escorted by Correction Officers. This created a negative image. One where other General Population prisoners viewed Plaintiff in need of constant protection.

Defendant All Program Review Committee members intentionally created this "Modified Movement" restriction in order to draw negative attention to Plaintif, placing Plaintiff in jeopardy, creating a hostile environment. See: ***Thomas v. Tice***, 948 F.3d 133 (3d Cir. 2020).

Throughout this entire "Modified Movment" ordeal, no meaningful review of this situation took place. See: ***Sourbeer v. Robinson***, *Supra*.

39

## BY WAY OF RELIEF YOUR PLAINTIFF REQUESTS:

a. Proper training for all PA DOC employees to assure this does not occur to another human being, including capital case prisoners.

b. This abusive/weaponized use of "*Modified Movement*" against CCU prisoners at SCI-Phoenix (as well as anywhere else) is to be done away with. Is to be no longer used by the PA DOC.

c. $2,500,000.00 in Punitive damages.

d. $2,500,000.00 in Compensatory damages.

e. Pay any and all court costs/legal fees associated with this § 1983 action, including attorney fees.

f. Assurance that the PA DOC will not act in a retaliatory fashion against Plaintiff.


# CONCLUSION

• Plaintiff thanks this Honorable Court for its patience and understanding.

• Discovery will better able Plaintiff the ability to fully develop and present the issues in this Civil Action.

• Plaintiff has presented 33 Exhibits in support of this § 1983 in prior filings. He respectfully requests that this Honorable Courtconsider those supporting documnts when

40

the Court is reaching its decision.

- Plaintiff respectfully requests this Honorable Court grant Plaintiff the Relief he has requested. And or any other Relief this Court deems appropriate.

Sincerely,

S/ *Richard Laird*
Richard Laird, #AT-0811
SCI-Somerset
1600 Waters Mill Road
Somerset, PA 15510

2-12-24
Date

## DECLARATION

I declare under Penalty of Perjury that the foregoing is true and correct to the best of my personal knowledge.

Sincerely,

S/ *Richard Laird*
Richard Laird, #AT-0811

2-12-24
Date

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing has been served upon the following by *First Class Mail*:

Matthew Skolnik
Office of the Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103

41

Sincerely,

S/ _Richard Laird_____

Richard Laird, #AT-0811

_2-12-24_____

Date

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD LAIRD,                                    :
               Plaintiff,                       :
                                     :
      v.                                         :        CIVIL ACTION
                                     :
J. TERRA, WYNDER, HENSLEY,                         :        No. 23-3429
ALL PROGRAM REVIEW COMMITTEE                       :
MEMBERS AT SCI-PHOENIX,                            :
               Defendants,                      :

# ORDER

And now this _____ day of _____, 2024. It is ORDERED that

Plaintiff's § 1983 CIVIL RIGHTS COMPLAINT BY A PRISONER will proceed.


By the Court:


S/_____

RICHARD LAIRD #AT0811
SCI-SOMERSET
1600 WATERS MILL RD.
SOMERSET PA 15510

FEB 1 6 2024

BY:

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
PHILADELPHIA PA 19106-9865

US POSTAGE PITNEY BOWES
15510
$ 003.07
C901397502 FEB 13 2024