**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD LAIRD, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-3429 |
| | : | |
| J. TERRA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

# ORDER

**AND NOW**, this _____ day of _____, 2024, upon consideration of the Motion for Summary Judgment of Defendants Terra, Wynder, and Hensley, Defendants' Statement of Undisputed Material Facts, and Plaintiff's response(s) thereto, it is hereby **ORDERED** that Defendants' Motion is **GRANTED**.

IT IS FURTHER **ORDERED** that judgment as a matter of law is hereby ENTERED in favor of Defendants Terra, Wynder, and Hensley and that this lawsuit shall be marked CLOSED.

**BY THE COURT:**

_____
**KEARNEY, J.**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD LAIRD, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-3429 |
| | : | |
| J. TERRA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants J. Terra, Wynder, and Hensley, through their undersigned counsel, hereby move for summary judgment pursuant to Fed. R. Civ. P. 56. As explained in the accompanying brief, there is no genuine dispute as to any material fact concerning, *inter alia*: (1) whether Plaintiff's 229-day stay in administrative custody, with periodic reviews, satisfied the Eighth and Fourteenth Amendments; and (2) whether Defendant Terra personally violated Plaintiff's First, Eighth or Fourteenth Amendment rights by placing him on modified movement restrictions, after his release from administrative custody or, in the alternative, is entitled to qualified immunity.

**WHEREFORE**, Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

Date: August 8, 2024   By:   */s/ Matthew Skolnik*

Matthew Skolnik
Senior Deputy Attorney General
Attorney ID No. 89423

Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2136
Fax:    (717) 772-4526
mskolnik@attorneygeneral.gov

Nicole R. DiTomo
Chief Deputy Attorney General
Civil Litigation Section

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD LAIRD, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-3429 |
| | : | |
| J. TERRA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

BRIEF IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Defendants Superintendent Terra, Deputy Wynder, and Deputy Hensley, through the undersigned counsel, respectfully submit this brief in support of their Motion for Summary Judgment on Plaintiff's Amended Complaint (ECF No. 33).

I.   **BACKGROUND**

   A.   **Undisputed Material Facts**

Defendants incorporate herein by reference their Statement of Undisputed Material Facts (ECF No. 44, hereafter "Defs' SMF") in support of this Motion for Summary Judgment, in its entirety including the Appendix and Superintendent Terra's Declaration ("Terra Decl.").

   B.   **Relevant Procedural History**

Plaintiff Richard Laird, who is proceeding *pro se*, commenced this action on August 31, 2023. When this Court (the Honorable Mark A. Kearney) granted the Motion to Dismiss filed by the above Defendants, along with original defendant Secretary Harry, all claims against Secretary Harry and all claims against Deputy Superintendents Wynder and Hensley "concerning Plaintiff's placement on modified movement restrictions" were dismissed with prejudice. Order dated 1/31/24 (ECF No. 32), ¶¶ 1, 2. But Laird's Eighth and Fourteenth Amendment claims

"concerning Plaintiff's placement in solitary confinement"[1] were dismissed without prejudice, with leave to amend, as to Defendants Terra, Wynder and Hensley. Likewise, Laird's First, Eighth, and Fourteenth Amendment claims "concerning Plaintiff's placement on modified movement restrictions as to Superintendent Terra" (only[2]) was dismissed without prejudice, with leave to amend. *See id.*, ¶ 3.

As the Court explained, Plaintiff's original Complaint "refer[red] to these Facility officials as a collective without explaining each individual's personal involvement." Memorandum of 11/30/23 (ECF No. 23) (Kearney, J.) at 5. Plaintiff thereafter filed his Amended Complaint (ECF No. 33) on February 20, 2024. Although whether Plaintiff adequately pled individual personal involvement in his amended pleading may have been debatable, Defendants Terra, Wynder and Hensley timely filed an Answer. *See* ECF Nos. 35 & 36.

Discovery included, but was not limited to, Plaintiff's deposition (Exhibit 1, App_001-099) and Defendants' responses to Plaintiff's requests for production of documents.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine

---

[1] Although the PA DOC does not use the term "solitary confinement," Defendants, without equating the two terms and for the purposes of this Motion only, acknowledge that Plaintiff's allegations of "solitary confinement" refer to the time period when he was in administrative custody (AC) status.

[2] By "only," we mean out of the three movants. The Court's dismissal of defendants originally named by Plaintiff as "All Program Review Committee Members" also was without prejudice, but such individuals have neither been identified nor served and, thus, are not parties to this Motion or any operative claim.

issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

A plaintiff opposing summary judgment "must present <u>affirmative</u> evidence . . . to defeat summary judgment, and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Still, the plaintiff "must point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

**III.    ARGUMENT**

The evidentiary record makes clear that Plaintiff Laird cannot establish a prima facie case against Defendants Terra, Wynder and Hensley, under either the Eighth or Fourteenth Amendments, concerning his placement into administrative custody status on August 8, 2022. Nor did the conditions of his confinement while in AC status violate his constitutional rights. Likewise, Plaintiff cannot establish any violation of a federal right by Defendant Terra – regardless of whether under the First, Eighth, or Fourteenth Amendment – concerning Plaintiff's placement on modified movement restrictions 229 days later on March 24, 2023. In the

3

alternative, Superintendent Terra is entitled to qualified immunity related to Plaintiff's claims concerning his "modified movement" status.

### A. Defendants lacked personal involvement in Plaintiff's AC placement itself.

It is a bedrock principle that Section 1983, 42 U.S.C. § 1983, requires the personal involvement of individual defendants in any alleged wrongdoing, not mere *respondeat superior* liability. *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Personal involvement has to be pled at the outset and, at the summary judgment stage, supported with "appropriate particularity." *See Rode* at *id.* Plaintiff "must portray specific conduct by state officials which violates some constitutional right." *Chavarriaga, v. N.J. Dept. of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970)). *See also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018) ("in the face of [a] motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial."). Granting summary judgment is appropriate where the plaintiff has not shown that defendants were personally involved in the predicate acts. *Solan v. Ranck*, 326 F. App'x 97, 101 (3d Cir. 2009) (citing *Rode*).

When there are multiple defendants in a given case, they cannot all be "lumped together." *Agresta v. City of Phila.*, 694 F. Supp. 117, 121 (E.D. Pa. 1988). Each can only be held accountable for his or her own particular actions. A prison official's "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997).

In the present case, Plaintiff has acknowledged that the August 2022 decision to place him into AC status was made by a combination of Security staff – including but not limited to Lieutenant Joliff and then-Deputy Superintendent Bradley – and then-Superintendent Sorber. *See*

4

Pl.'s Dep., Ex. 1, at App_025-031; *see also* Defs' SMF, ¶¶ 13-14 and citations therein. Specifically with reference to the 802 Report form (*see* Ex. 2, App_100), Plaintiff testified as follows:

> Lieutenant Jolliff [sic] . . . held up a form, and said, normally I just have the guys sign this and then send them back to their block. However, I was in a meeting with the higher ups, and they want you locked up until we can straighten all this out. There you go.
>
> Q. And did Lieutenant Jolliff say who those higher ups were?
>
> A. Lieutenant Jolliff did not say who the higher ups were.
>
> Q. Do you know who those higher ups were?
>
> A. I, I can only assume, and, and we can't do that in something like this. . . . But I have a good idea. I have a good idea.
>
> Q. Well, to the best of your knowledge, who were they?
>
> A. All she told me was that she was . . . in a meeting with the higher ups. And usually that's a round table board meeting that they have up there. . . .
>
> . . . .
>
> A. That would be . . . the deputy in charge of security, the deputies at the facility, and the superintendent himself might be there.
>
> Q. Do you remember who the deputy in charge of security at the time was?
>
> A. Deputy Superintendent Bradley[.]

Pl.'s Dep., Ex. 1, at App_030:10 – 31:16.

It is undisputed that SCI Phoenix's Superintendent at the time (August 2022) was Mr. Sorber. Defs' SMF, ¶ 13 and citations therein. Neither Mr. Sorber nor Mr. Bradley is a party to this lawsuit. It is further undisputed that Defendant Terra was Deputy Superintendent for Centralized Services (DSCS) at the time and that Defendant Wynder was the Deputy for

5

Facilities Management. Terra Decl., App_161, ¶ 1; Defs' SMF, ¶ 4. Defendant Hensley, who now is in Mr. Terra's former DSCS position, was on the Program Review Committee (PRC, *see* Ex. 10, App_146-155) and allegedly told Plaintiff he would be in the RHU "indefinitely." Pl.'s Dep. at App_079:2-8.

The issue is not whether the three Defendants agreed with the AC placement decision or whether they approved its continuation, neither of which is disputed, but whether they were the decision-makers as to the August 8, 2022 placement. Although there is no record evidence supporting this particular allegation, Plaintiff alleges that Defendant Terra "ordered" the AC status and "torture" on August 8, 2022 and "used Hearsay in an attempt to justify his actions[.]" Amended Compl. (ECF No. 33) at 5. Plaintiff uses nearly identical language concerning Defendants Wynder and Hensley. *See* Am. Compl. at 12 (Wynder) & 19 (Hensley). These allegations, without record evidence, are insufficient as a matter of law. Supervisory liability may attach only if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Plaintiff has offered no evidence that anyone other than Security staff and then-Superintendent Sorber ordered his placement into AC status. Thus, none of the Defendants can be liable for Plaintiff's placement into the RHU on August 8, 2022. Defendants respectfully submit that this foundation of Plaintiff's lawsuit cannot proceed to trial.

**B.     Because Plaintiff was afforded meaningful periodic reviews of his AC status, Defendants are entitled to Summary Judgment on the Due Process claim.**

The Due Process clause of the Fourteenth Amendment essentially requires the state to provide a person notice and opportunity to be heard in connection with the deprivation of life,

6

liberty, or property. *Zappan v. Pa. Bd. of Probation & Parole*, 152 F. App'x 211, 220 (3d Cir. 2005). To establish a due process claim under the Fourteenth Amendment, Plaintiff must first demonstrate the existence of a constitutionally protected liberty interest impaired by defendants' actions. *Hewitt v. Helms*, 459 U.S. 460 (1983). The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. *Meachum v. Fano*, 427 U.S. 214, 224 (1976). As such, the initial inquiry presented by an inmate's due process claim is whether defendants' actions impacted a constitutionally-protected liberty interest. *Zappan*, 152 F. App'x at 220. If so, the question then becomes what process is due to protect the interest. *Id.*; *Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010).

Prisoners do not enjoy the same liberty interests as free individuals. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995). Instead, a liberty interest may arise when a prison's actions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Zappan*, 152 F. App'x at 220 (citing *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000)). To determine whether disciplinary segregation imposes such an "atypical and significant hardship," courts consider "the duration of the challenged conditions" and the severity of the conditions "in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017) (citing *Shoats*, 213 F.3d at 144).

In *Shoats*, the Third Circuit held that the periodic review offered to Pennsylvania inmates who are indefinitely confined in administrative custody comports with procedural due process because, *inter alia*, the inmate is provided a hearing, has the right to appeal the rationale for placement into AC status, and has the right to be interviewed by the PRC with periodic reviews every 30 (or 90) days. *Id.* at 145. *See also* DC-ADM 802, Ex. 3, App_113-118 ("Administrative Hearings"). Thus, retaining an inmate in the RHU does not violate due process requirements

7

when the inmate receives periodic reviews. *See Gans v. Rozum*, 267 F. App'x 178, 180-81 (3d Cir. 2008) (inmate in administrative custody for eleven years); *Williams v. Sebek*, 299 F. App'x 104, 107 (3d Cir. 2008) (inmate in AC status for five and a half years did not require a remedy because he received the required periodic reviews of his status by the program review committee); *Bowen v. Ryan*, 248 F. App'x 302, 304 (3d Cir.2007) (inmate in AC status for twenty years on restricted release status); *Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010) ("confinement in AC for 178 days does not amount to an 'atypical and significant hardship' when compared to the ordinary incidents of prison life").

This month, one district court, in the context of a Rule 56 motion, summarized the relevant Due Process standards as follows:

> There is no bright line defining where the duration of segregation becomes atypical. *Williams*, 848 F.3d at 561-62. An inmate sentenced to thirty days in disciplinary confinement does not endure such hardship. *See Sandin*, 515 U.S. at 486. On the other hand, eight years is atypical. *Shoats*, 213 F.3d at 144. The typicality of the duration varies with the conditions of confinement. The more restrictive the conditions, the shorter the time spent under them will be atypical. Conversely, the less restrictive, a longer time may be typical.

*Wayne v. Wetzel*, C.A. No. 21-4209, Memorandum Op., 8/7/24, at 19 of 22 (Savage, J.) (granting defendants' motion for summary judgment, even though plaintiff "Wayne has been continuously held in restricted housing for seven years.").[3]

In the present case, there is no allegation that Defendants failed to comply with the procedural requirements of DC-ADM 802 (App_101-125). A significant security issue had been identified by Lieut. Joliff and others. *See* 802 Report, Ex. 2, App_100; Terra Decl., Ex. 14, App_162 (¶¶ 5-9). Yet, Plaintiff claims that he did not need protection from other inmates at SCI

---

[3] For Plaintiff's convenience, a copy of this non-binding recent authority is appended hereto.

8

Phoenix and was "not in fear for my life." Ex. 4, Pl.'s Appeal, App_127. Both things *may* have been simultaneously true, in that there was a legitimate security threat due to Laird's formation and leadership of WHITE PHOENIX (*see* Exs. 5 & 6) and, yet, Plaintiff simply did not want protection from prison staff. But that does not, in any way, shape or form, mean that Laird's 229 day-long stay in the RHU violated his due process rights. Among other procedural safeguards, Plaintiff received periodic reviews every seven days during the first two months of his AC status, weekly visits with his counselor, and two 90-day PRC reviews in which he participated. Defs' SMF, ¶¶ 16-20 and citations therein.

  While Plaintiff is entitled to disagree with the <u>decisions</u> made by the PRC and other prison officials during the 229 days (although none of them seem to have been made by Defendant Wynder), there can be no dispute that he was afforded meaningful periodic reviews and, thus, adequate due process. There is no record evidence that Defendants Terra, Wynder, or Hensley violated Plaintiff's due process rights. All of his appeals and requests to staff members were considered and generated responses. *See generally* Exs. 4, 10, 11, 12 & 15. In fact, the PA DOC's Chief Hearing Examiner – who is not a party – conducted a final review of Laird's placement in Administrative Custody, which afforded the plaintiff even more due process. *See* Ex. 12, App_158. The relevant inquiry is not the outcome of the periodic reviews, but the fact that such procedures were made available to the inmate. *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002).

  All of the procedures applied to Plaintiff's AC status comported with the requirements of *Shoats* and its progeny. Therefore, all three Defendants are entitled to judgement as a matter of law on Plaintiff's Fourteenth Amendment claim concerning his AC status.

9

### C.  Plaintiff cannot proceed with a Fourteenth Amendment claim against Defendant Terra based on the Modified Movement restrictions.

The contours of Plaintiff's Fourteenth Amendment claim against Superintendent Terra is less clear when applied to the modified movement restrictions. *See* Am. Compl. (ECF No. 33) at 32-35. Although Plaintiff alleges that Defendant Terra violated a Due Process-protected liberty interest as well as the Equal Protection Clause, *see* Am. Compl. at 33, these are mere conclusory allegations with no record evidence obtained during discovery. On the contrary, the evidentiary record establishes that Defendant Terra is entitled to summary judgment on all Fourteenth Amendment claims related to the modified movement restrictions.

On April 21, 2023, Plaintiff wrote to Superintendent Terra, thanking him for the release from AC status and asking that the modified movement restrictions be lifted because they were "unnecessary" and "making life a little more difficult than I believe they need to be." Specifically, Plaintiff requested permission to "attend gym and/or church unescorted" rather than with the escorts specified in Defendant Wynder's Memo (*see* previous page). Ex. 15 at App_192. If the defendant had ignored this request, *arguably* that could support a Due Process claim, but here the Superintendent considered Laird's request and responded in a timely fashion – only four days later. *See id.* at App_191 ("In response to your letter. Not at this time.") (dated 4/25/23). As with the meaningful reviews of Plaintiff's AC status, such consideration was all that the Due Process Clause required of Defendant Terra.

Finally, it is unknown what is meant by Plaintiff's fleeting reference to the Equal Protection Clause. He is not a member of a protected class. To the extent he is attempting to assert an Equal Protection "Class of One" claim, any such claim must fail because (among other reasons) the Modified Movement memo (Exhibit 13) makes clear that the restrictions applied equally to <u>five</u> Capital Case inmates – not just the plaintiff. *See* App_159. Moreover, there is no

evidence of any intention on Defendant Terra's part to use the modified movement restrictions in a discriminatory manner. Although the Security Threat Group Management Unit had been phased out, *see* App_163, the security threat to (or from) Plaintiff Laird remained once he was out of AC status.

For all of the above reasons, Plaintiff's Fourteenth Amendment claims against Defendant Terra fail as a matter of law.

### D. The Conditions of Plaintiff's Confinement in Administrative Custody and on Modified Movement did not Violate the Eighth Amendment.

The Supreme Court has adopted a two-pronged test for determining whether a prison official violated the Eighth Amendment's prohibition of cruel and unusual punishment. The first prong is an objective determination of whether the deprivation is "sufficiently serious" such that the official's act or omission resulted "in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Life's necessities include "food, clothing, shelter, medical care, and reasonable safety." *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000)." Only "extreme deprivations" of one of life's necessities are sufficient to establish a conditions of confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The second prong is a subjective test of whether the official has a "sufficiently culpable state of mind," that of "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Plaintiff's Eighth Amendment claims concerning the conditions of his confinement take on three primary forms. First, Plaintiff complains that the 229 days in AC constituted "torture" and caused him to experience severe depression/stress, suicidal thoughts, and severe weight loss.

11

*See* Am. Compl. at 3, 5, 7, 9-10, 12, 14, 16, 19-21, 23-24, 26-28. Although this falls under the medical care necessity category, Plaintiff did not report any of these health conditions during his stay in the RHU. Pl.'s Dep., Ex. 1, at App_065:15 – 66:20.  Second, Plaintiff complains of conditions such as dirty showers and sleeping without a pillow or blanket in "freezing temperatures." Am. Compl. at 10. Plaintiff claims that showering in "sewer water" caused his toenails to become infected, *see id.*, although he never sought treatment for this condition, which continues to this day – even though, more than a year later, Plaintiff is in general population at a different prison. Pl.'s Dep. at App_073:16 – 75:4. Third, as to Defendant Terra only (*see* § I.B, *supra*) Plaintiff complains that the modified movement restrictions constituted cruel and unusual punishment. Am. Compl. at 33-35.

There is no record evidence of the adverse health effects Plaintiff is attributing to his AC status, likely because he admitted never reported them. *See* App_065:15 – 66:20. Although Plaintiff did appeal his AC status, *see* Ex. 4, he never mentioned severe depression/stress, suicidal thoughts, or severe weight loss in connection with his appeal(s) – let alone attributing such medical conditions to one or more of the Defendants. Even if, *arguendo*, Plaintiff can satisfy the objective test of an "extreme deprivation" under *Farmer*, as a matter of law and fact he has failed to establish the subjective test. In other words, Plaintiff cannot establish that any of the defendant officials had a "sufficiently culpable state of mind," i.e., "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 298.

As for Plaintiff's claims related to dirty showers and cold temperatures, they must fail for the additional reason that they do not even meet the objective test. This is because while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual

punishment, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

Finally, there simply is no record evidence supporting an Eighth Amendment claim related to the modified movement restrictions. Therefore, all of Plaintiff's Eighth Amendment claims should be dismissed.

### E. Defendant Terra was not involved in any ancillary violation of Plaintiff's First Amendment rights (if any).

Plaintiff's First Amendment claim against Superintendent Terra is in the nature of a freedom of religious expression claim. Specifically, Laird alleges that – after he was released from AC status and the modified movement restrictions were applied – prison staff interfered with his attendance at Catholic Mass and he "was denied the opportunity to attend a Certified Catholic Studies Group." Am. Compl. at 34.

At his deposition, Plaintiff acknowledged that the "harassment" and interference with his attending church services was not committed by Defendant Terra, but by "regular COs." Pl.'s Dep., Ex. 1, at App_085:5-20. This is fatal to Plaintiff's First Amendment claim against Terra. *See Rode*, 845 F.2d at 1207.

Moreover, Plaintiff cannot establish a First Amendment claim related to his not being allowed to attend a Catholic Studies Group. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court directed lower courts to consider four factors when assessing the reasonableness of a prison regulation that burdens an inmate's constitutional rights. The Third Circuit has explained:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational. Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that fully

13

>     accommodate[ ] the prisoner's rights at de minimis cost to valid penological
>     interests.

*De Hart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).

Here, Plaintiff's claim fails due to, at the very least, the first two factors. The legitimate penological reasons for the modified movement restrictions have been previously explained and need not be repeated here. *See* § III.C, D; *see also* Terra Decl., App_163 (¶¶ 14, 16). Second, the restrictions themselves, see Ex. 13, App_159, expressly allowed one religious service per week. Plaintiff was not prevented from praying, meditating, studying, or discussing his religion with other inmates on the Capital Case Unit, for example. This allowed Plaintiff an "alternative means of exercising the [allegedly] circumscribed right," as required under *Turner*.

For all of the above reasons, Plaintiff's First Amendment claim against Terra fails.

### F. In the alternative, Defendant Terra is entitled to Qualified Immunity from Plaintiff's "Modified Movement" Claims.

The defense of qualified immunity shields government officials, in their individual capacities, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity requires the Court to consider two issues: (1) whether the plaintiff has shown a violation of a federal right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court may consider these issues in any order, and the plaintiff's failure to establish either issue entitles a defendant to immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 & 236 (2009).

#### 1. Modified movement restrictions did not violate Plaintiff's federal rights.

For the reasons explained in Sections III.C-E, *supra*, Defendant Terra did not violate Plaintiff's First, Eighth or Fourteenth Amendment rights by placing him on modified movement

14

restrictions.

        2. <u>There was no clearly established law, as of the date of the incident, precluding Qualified Immunity for Terra.</u>

Satisfying the second element of qualified immunity – that the right at issue was clearly established – is a two-step process. First, a court must "define the right allegedly violated at the appropriate level of specificity," meaning that it must be defined "in light of the case's specific context, not as a broad general proposition." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017) (internal citation and quotation marks omitted). Second, once the right is defined, a court must "identify a case where an officer acting under similar circumstances" was held to violate the constitution. *White v. Pauly*, 137 S.Ct. 548, 552 (2017). The law does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

For each theory of liability, the plaintiff must articulate the particular right at issue and cite controlling authority clearly establishing that right, in this factual context, prior to March 23, 2023, the date of the Modified Movement memo (Ex. 13, App_159). It is not the defendant's burden to prove the absence of controlling authority. That said, Defendant Terra is unaware of any authority holding that modified movement restrictions placed upon an inmate who is credibly accused of forming a "White Power" group of inmates at a maximum security prison would violate the First, Eighth or Fourteenth Amendments. Therefore, Defendant Terra is entitled to qualified immunity from all of Plaintiff's claims concerning his placement on modified movement restrictions.

IV.     **CONCLUSION**

For all the foregoing reasons, Defendants Terra, Wynder, and Hensley respectfully request that this Court grant their Motion for Summary Judgment, in the form of Order appended hereto.

                                              Respectfully submitted,

                                              MICHELLE A. HENRY
                                              Attorney General

Date: August 8, 2024                    By:   */s/ Matthew Skolnik*

                                              Matthew Skolnik
Office of Attorney General              Senior Deputy Attorney General
1600 Arch Street, Suite 300           Attorney ID No. 89423
Philadelphia, PA 19103
Phone: (215) 560-2136                 Nicole R. DiTomo
Fax:    (717) 772-4526                 Chief Deputy Attorney General
mskolnik@attorneygeneral.gov      Civil Litigation Section

                                              *Counsel for Defendants*
                                              *Terra, Wynder and Hensley*

## **CERTIFICATE OF SERVICE**

I, Matthew Skolnik, hereby certify that the foregoing Defendants' Motion for Summary Judgment, with all supporting papers and exhibits thereto, has been filed electronically on August 8, 2024 and is being served upon the following Plaintiff via U.S. Mail:

Smart Communications/PADOC
**Richard Laird, AT-0811**
SCI Somerset
PO Box 33028
St. Petersburg, FL 33733

Date: August 8, 2024         By:   */s/ Matthew Skolnik*
                                   _____
                                   Matthew Skolnik
                                   Senior Deputy Attorney General